Zimmerman, J.
 

 As this court views the matter, there are two controlling questions involved in this appeal. The first and probably more important is: Do the claims asserted by plaintiffs in their petition arise upon contract within the meaning and intent of Section 11819, General Code, so as to support the attachments? The second is: Where property has been attached as an incident of a civil action for the recovery of money, should a court entertain favorably motions to discharge the attachment on the ground that the moving parties are not the owners of the property attached?
 

 These questions will be answered in the order stated.
 

 So far as it is pertinent, Section 11819, G-eneral Code, reads:
 

 “In a civil action for the recovery of money, at or after its commencement, the plaintiff may have an attachment against the property of the defendant upon any one of the grounds herein stated:
 

 i t
 
 ¥* # *
 

 “2. Is not a resident of this state:
 

 ( i
 
 $ # #
 

 “An attachment shall not be granted on the ground that the defendant is * * * not- a resident of this state, for any claim other than a debt or demand, arising upon contract * *
 

 
 *396
 
 In the cases of
 
 Weirick
 
 v.
 
 Mansfield Lumber Co.,
 
 96 Ohio St., 386, 117 N. E., 362, and
 
 Hart
 
 v.
 
 Andrews,
 
 103 Ohio St., 218, 132 N. E., 846, this court held that statutes pertaining to the attachment of property are of a remedial nature and require both a liberal construction and a liberal application to the facts of a particular case.
 

 Commenting on the subject of remedial statutes, the late Professor Eugene Wambaugh, in an article entitled, “How to Use Decisions and Statutes,” found in Cooley on Brief Making (2 Ed.), 139, said:
 

 “In remedial statutes words are to be construed liberally. This rule is so applied as to extend the statute beyond its actual language to cases within its reason and general intent. ’ ’
 

 A true contract may be defined as one where the consent of the contracting parties produces the obligation. It is apparent that the allegations of the petition herein do not disclose such a contract. However, we believe that such petition does contain allegations which show at least quasi-contractual obligations on the part of the appellants.
 

 Briefly, a quasi contract is an obligation imposed by law to promote justice and to prevent fraud or wrongdoing. It has also been defined as a fiction of law whereby a promise is imputed to perform an act such as the repayment of money procured for a fraudulent or wrongful purpose. See 9 Ohio Jurisprudence, 336, Section 119.
 

 Quasi contracts are most often implied in situations involving unjust enrichment or restitution. See 3 Ohio Jurisprudence, 768, Section 7;
 
 Trincia
 
 v.
 
 Testardi
 
 (Del. Ch.), 57 A. (2d), 638, 642; and
 
 Bill
 
 v.
 
 Gattavara,
 
 34 Wash. (2d), 645, 650, 209 P. (2d), 457, 460.
 

 For a dissertation on the various kinds of contracts, reference is made to the eases of
 
 Columbus, Hocking
 
 
 *397
 

 Valley & Toledo Ry. Co.
 
 v.
 
 Gaffney,
 
 65 Ohio St., 104,. 113, 61 N. E., 152, 153, and
 
 Hummel, Sr.,
 
 v.
 
 Hummel,
 
 133 Ohio St., 520, 525, 14 N. E. (2d), 923, 925. The opinion in the latter case, written by Judge Williams,, discusses the subject interestingly and instructively as follows:
 

 “There are three classes of simple contracts; express, implied in fact, and implied in law. Keener on Quasi Contracts (1893), 3. In express contracts the assent to its terms is actually expressed in offer and acceptance. In contracts implied in fact the meeting' of the minds, manifested in express contracts by
 
 offer
 
 and acceptance, is shown by the surrounding circumstances which make it inferable that the contract exists as a matter of tacit understanding. In contracts implied in law there is no meeting of the minds, but civil liability arises out of the obligation cast by law upon a person in receipt of benefits which he is not justly entitled to retain and for which he may be made to respond to another in an action in the nature of assumpsit. Contracts implied in law are not true contracts; the relation springing therefrom is not in a strict sense contractual but quasi contractual or constructively contractual. In truth contracts implied in .law are often called quasi contracts or constructive contracts.
 
 Columbus, Hocking Valley & Toledo
 
 Ry.
 
 Co.
 
 v.
 
 Gaffney,
 
 65 Ohio St., 104, 61 N. E., 152.
 

 “The doctrine of liability on a quasi contract was recognized early in common-law jurisprudence. It has been said that ‘the belief is general in this country that Lord Mansfield
 
 made
 
 the law of quasi contracts, that until his time the action, due to fragmentary development, was limited in scope. ’ 45 Harvard Law Review,
 
 1333;
 
 see, also, Woodward on The Law of Quasi Contracts, 2, Section 2.
 

 “The pronouncement of that jurist on the subject is
 
 *398
 
 found in
 
 Moses
 
 v.
 
 Macferlan,
 
 2 Burr., 1005, from which we quote this significant language: ‘This kind of equitable action, to recover back money, which ought not in justice to be kept, is
 
 very beneficial,
 
 and therefore
 
 much encou,raged.
 
 It lies
 
 only
 
 for money which,
 
 ex aequo et bono,
 
 the defendant
 
 ought
 
 to refund: It does
 
 not lie
 
 for money paid by the plaintiff, which is claimed of him as
 
 payable in point of honour and honesty * * *
 

 “ ‘In one word, the gist of this Mnd of action is, that the defendant, upon the circumstances 'of the case, is
 
 obliged by the ties of natural justice and equity
 
 to
 
 refund
 
 the money.’
 

 ‘ ‘ It will be observed that in this quotation the action is referred to as equitable. It must be conceded that a suit for money had and received based on a quasi contract, is, in some sense, an equitable action
 
 (Western Assurance Co.
 
 v.
 
 Towle,
 
 65 Wis., 247, 26 N. W., 104); but it seems to be equitable only to the degree that it is based on a moral obligation to make restitution which rests upon a person who has received a benefit which if retained by him, would result in inequity and injustice. Woodward on Quasi Contracts (1912), Section 6. The moral obligation thus becomes the basis for a legal obligation giving rise to an action on the common counts.
 
 Wellston Coal Co.
 
 v.
 
 Franklin Paper Co.,
 
 57 Ohio St., 182, 188, 48 N. E., 888.”
 

 In Restatement of the Law of Restitution, Quasi Contracts and Constructive Trusts, 22, Section 5, comment b, it is stated that ‘ ‘ the issuance of attachments for breach of contract and the like, are ordinarily construed as being applicable to quasi-contractual causes of action.”
 

 Such was the attitude of the Supreme Court of California in the case of
 
 McCall
 
 v.
 
 Superior Court of Imperial County,
 
 1 Cal. (2d), 527, 531, 36 P. (2d), 642,
 
 *399
 
 644, 95 A. L. R., 1019, 1022, where it was remarked in the course of the opinion:
 

 “This brings ns to inquire whether or not the language of Section 537 of the Code of Civil Procedure, allowing attachment * * in an action upon a contract, express or implied, for the direct payment of money * * *’ embraces within its terms an implied promise supplied by law of the character above described. In other words, there are at least three classes of promises to pay — an express promise to pay, a promise implied from the facts of the case, and a promise implied by law. Does the chapter of said code on attachments allow a writ where the promise is supplied by law?
 

 “We have seen that the implied promise supplied by law is
 
 ex contractu
 
 in its nature. * * * With this in mind, we are unable to see any distinction between the three classes of promises so far as, said chapter of the code is concerned, or why all are not included in the section allowing attachment.”
 

 Compare
 
 Lipscomb
 
 v.
 
 Citizens’ Bank of Galena,
 
 66 Kan., 243, 71 P., 583, and
 
 Pennsylvania Rd. Co. v. Peoples,
 
 31 Ohio St., 537, both of which would seem to be authority for the proposition that the words, “a debt or demand arising upon contract, ’ ’ as used in an attachment statute embrace a contract implied either in fact or in law.
 

 Giving, then, to the words, “arising upon contract,” as used in Section 11819, General Code, the liberal interpretation enjoined (see Section 10214, General Code), the first question propounded above must be answered in the affirmative.
 

 As to the second question, it is to be noted that, although Wheeling Dollar Savings
 
 &
 
 Trust Company intervened and filed a motion supported by an affidavit to discharge the attachments of the two checks issued in the names of D. A. Burt, Jr., and William L. Burt,
 
 *400
 
 respectively, it took no appeal from the determination of the trial court overruling its motion. This left to the Court of Appeals and leaves to this court for consideration the question of whether the trial court properly overruled the separate motions of D. A. Burt, Jr., and William L. Burt to discharge the attachments on the two checks issued to them, because such checks and the proceeds thereof belonged to Wheeling Dollar Savings & Trust Company.
 

 Many years ago this court held in the case of
 
 J. Langdon & Bro.
 
 v.
 
 Conklin & Martin,
 
 10 Ohio St., 439, 440, that “it is not competent for a defendant in attachment to move the court to discharge the attachment on the ground that the property attached does not belong to him. And it is error for a court or judge at chambers to sustain such motion.”
 

 That case has been consistently followed by the lower courts of Ohio throughout the years.
 

 In 7 Corpus Juris Secundum, 612, Attachment, Section 426, the following language is used:
 

 “Courts have, as a rule, considered as insufficient to warrant a vacation of an attachment the fact that defendant in attachment has no interest in the property levied on, since, ordinarily, defendant will not be injured by seizure of property which he does not own; but where the attachment was resorted to in order to obtain jurisdiction, a nonresident defendant has been allowed to show his lack of interest in the property attached for the purpose of ousting the court of jurisdiction.”
 

 Relying upon the latter part of the above quotation and cited cases, the two Burts claim that the object of the attachments and the effect thereof is to force them into an Ohio court to defend an action outside the state in which they reside. However, they do not have to submit themselves personally to the jurisdiction of the Ohio court and if the attached property does
 
 *401
 
 not belong to them they will suffer no material injury by the disposition Ohio courts may make of the same.
 

 Any judgment rendered would be in rem and would bind only the property within the jurisdiction of the court. Beyond this the judgment could not extend, and it would be of no force or effect against the debtor over whose person no jurisdiction had- been obtained. In an instance where personal service is lacking, any judgment the court might render would be valid and enforceable only to the extent of the property attached. See 23 Ohio Jurisprudence, 726, Section 356.
 

 It is strenuously contended by the Burts that both lower courts were clearly wrong in concluding that the two attached checks, one payable to D. A. Burt, Jr., and the other to William L. Burt, were not in fact the property of the Wheeling bank and that they were not delivered by North American to The National City Bank of Cleveland for the purpose of satisfying certain promissory notes due the Wheeling bank from the Burts.
 

 It is to be remembered that the checks were made payable to the Burts and a careful examination of the notes above mentioned in their entirety, copies of which notes are contained in the record, makes it at least questionable whether at the time the attachments were effected on April 29, 1949, the Wheeling bank then had the right to have these checks applied ou the payment' of the notes. At the date of the attachments there was no default by the Burts as to the notes which would give the Wheeling bank the right to claim the checks and the proceeds thereof as its property. The answer to the second question is therefore in the negative.
 

 This court being of the opinion that the judgment of the Court of Appeals is without reversible error, the same is affirmed.
 

 Judgment affirmed.
 

 
 *402
 
 Weygandt, C. J., Stewart, Middleton, Matthias and Hart, JJ., concur.
 

 Taft, J., not participating.