Herbert, J.
Since there was no challenge in the court below, the propriety of the remedy sought or of the joinder of causes of action or parties respondent will not be reviewed or considered here.
The foregoing statement of facts is an attempt to set out adequately the three contentions of relators as contained in their three causes of action, namely, (1) the alleged invalidity of Section 3311.31, Revised Code, and the elective and administrative steps taken pursuant thereto by the respondents in 1956 and, subsequently, (2) the alleged failure of respondents to take action on the petition filed with them on December 9, 1957, “in accordance with and as required by law” and (3) the alleged failure of respondents to comply with the provisions of Section 133.04, Revised Code, with respect to the consent of the Department of Taxation.
As to their first cause of action, relators contend that Section 3, Article VI of the Ohio Constitution, does not give the Legislature the right to enact Section 3311.31, Revised Code, so far as it provided that “if any proposed plan of reorganization is approved by at least 55 per cent of all the qualified electors voting on such reorganization in the new district proposed to be created, the reorganization shall be accomplished * * *. If, however, 75 per cent of all the qualified electors voting on such reorganization in any one of the districts involved vote in opposition to the reorganization, then that district shall not be included in such reorganization.”
This section was repealed as of January 1, 1958, but was in effect during all the times involved in this case prior thereto.
Section 3, Article VI of the Ohio Constitution, provides as follows:
“Provisions shall be made by law for the organization, ad *59 ministration and control of the public school system of the state supported by public funds; provided, that each school district embraced wholly or in part within any city shall have the power by referendum vote to determine for itself the number of members and the organization of the district board of education, and provision shall be made by law for the exercise of this power by such school districts.”
Counsel for relators do not cite one single authority to support their contention as to the claimed unconstitutionality of the 75-per-cent provision cited. Respondents, however, do cite from the opinion in the case of Gigandet v. Brewer, Treas., 134 Ohio St., 86, 15 N. E. (2d), 964, the following:
“Broad powers were granted to the Legislature with reference to passage of laws for the arrangement of districts, changing of boundary lines and the transfer of territory from one district to another under Article YI, Section 3 of the Constitution.”
That statement of principle is conceded by relators in their brief.
There have been attacks made on school legislation enacted by the General Assembly, but this would appear to be the first of this nature.
In the case of State, ex rel. Ach, v. Evans, 90 Ohio St., 243, 107 N. E., 537, a law which classified school districts into three classes based on population was held to be a valid exercise of legislative power agreeable with the Constitution of Ohio.
Here, the attack seems to be made not so much on the overall requirement of a 55-per-cent total affirmative vote but rather upon what might be considered an escape provision permitting a district proposed to be included in the reorganization to be excluded therefrom in the event of a 75-pér-eent adverse vote within that particular district. The relators think this percentage was too high to be constitutional but suggest no other.
As admitted by the relators, the Court of Appeals decided that Section 3311.31, Revised Code, as it was in effect until January 1, 1958, was a constitutional enactment and could not be considered violative of Section 3, Article YI of the Ohio Constitution. Certainly this court is not of a contrary opinion.
Having determined this first contention of relators adversely to them, we then come to their second contention relating to *60 the petition containing the 2,320 voters’ signatures filed with the Board of Education of Clermont County.
This petition was filed on December 9, 1957, more than a year after the election resulting in the reorganization and consolidation. As of the time, therefore, that the petition was filed, there no longer existed what formerly had been the Amelia school district.
Relators state in their brief:
“At the outset we are faced with the question as to what, if any, of the sections mentioned in the petition and answers or other sections of the Revised Code are applicable to this situation. ’ ’.
Certainly this court is not going to speculate. Obviously neither Section 3311.22 nor Section 3311.23, Revised Code, as it was in effect in December 1957 is applicable to the facts presented for consideration here.
The proposal to separate out of West Clermont Local School District the territory which had formerly been the Amelia school district was not a proposal originating with the board of education but rather with the signatory petitioners. If their petition was to be taken as a petition of remonstrance, then relators fail utterly to establish their claimed authority for such filing. If it is to be taken as a petition requesting the “creation of a new local school district or districts” or “to dissolve a school district and return it to its original districts” then relators are urging in their petition that the county board of education should “take immediate action under the provisions of the Ohio Revised Code, Revised Code 3311.26 and Revised Code 3311.26 as amended and related sections.”
Section 3311.26, as it was effective from October 1, 1953, until January 1, 1958, merely provided the method by which new local school districts might be created. It contained no reference to or authorization for petitions requesting such school-district creations.
As of January 1, 1958, this newly enacted section became effective. It again relates to how a county board of education may propose the creation of a new local school district. This section even in its new form does not contemplate proceedings initiated by petition. Assuming, however, that there was statu *61 tory authority for relators to file their petition as they did, and assuming that the board of education was favorable to the proposal of re-creating the Amelia Local School District as it had existed prior to the reorganization, the board would have been without authority to do so because of the provision of Section 3311.28, Revised Code, which states:
“No school district shall be created in this state, except by a merger of existing school districts, at any time after October 2, 1953, which does not maintain within such district, schools covering grades from first to twelfth. Such district may include kindergarten.”
In 1958, the Attorney General properly held in opinion No. 1857 that, “under the provisions of Section 3311.26, Revised Code, a county board of education can, if all the statutory conditions are met, effect the division of one local school district into two local school districts by creating a new district by detachment of a part of the territory comprising the existing district, and in practical effect thus to ‘create’ two new districts; but in any such case the board’s authority to act is limited by the requirement in Section 3311.28, Revised Code, that each such district shall maintain a high school.”
We hold, therefore, that a plan to divide an existing school district which would create separate districts, one of which would be without a school having twelve grades, is violative of the provision of Section 3311.28, Revised Code, that “no school district shall be created in this state, except by a merger of existing school districts * * * which does not maintain within such district schools covering grades from first to twelfth,” and is therefore unlawful.
As to relator’s third contention, Section 133.04, Revised Code, provides in part as follows:
“The net indebtedness created or incurred by any school district shall never exceed nine per cent of the total value of all property in any such school district as listed and assessed for taxation, provided that bonds shall not be submitted to popular vote in an amount which will make the net indebtedness after the issuance of such bonds exceed four per cent of the total value of all property in such school district as listed and assessed for taxation, unless the Department of Taxation consents thereto.”
*62 It is claimed that since the Department of Taxation did not approve the issuance of the bonds until five days before election day, it was then too late for the department “to consent thereto”; and that such consent should have been given more than 40 days before election so that the board of education could have had this consent before certification of the issue to the board of elections.
Relators rely upon the case of State, ex rel. Board of Education of Painesville Local School District, v. Crandall, Clerk, 167 Ohio St., 399, 149 N. E. (2d), 163. In that case, this court held that an approval by the state Department of Education required for a proposed bond issue under the provisions of Section 133.041 not having been secured until January 21, 1958, the election having been held on November 5, 1957, the mandatory provisions of Section 133.041, Revised Code, were not complied with, so that the bonds voted could not then be issued. The decision in the Crandall case was of course bottomed on the fact that the consent was not obtained until long after the election, whereas, here, the consent was admittedly obtained five days before the election.
Obviously, this court cannot write into the statute words such as “more than 40 days before election” for which relators contend. Reliance has been placed upon the case of State, ex rel. Board of County Commrs. of Jackson County, v. Jenkins, Aud., 155 Ohio St., 402, 99 N. E. (2d), 179, the second paragraph of the syllabus of which holds that certification to a county auditor must be 60 days prior to an election, and the third paragraph of which syllabus holds that action by the county auditor thereon must be 50 days prior to such election. Examination of the statute there under consideration shows that these 60-day and 50-day requirements were contained right in the statute on which the decision was based.
In the instant case, the statute simply forbids submission of the question, “unless the Department of Taxation consents thereto. ’ ’
We hold, therefore, that the requirement in Section 133.04, Revised Code, that “bonds shall not be submitted to popular vote in an amount which will make the net indebtedness after the issuance of such bonds exceed four per cent of the total *63 value of all property in such school district as listed and assessed for taxation, unless the Department of Taxation consents thereto,” is fully met where such consent is secured before the election held thereon.
Accordingly, the judgment of the Court of Appeals is affirmed.

Judgment affirmed.

Weygandt, C. J., Zimmerman, Stewart, Taet, Matthias and Bell, JJ., concur.