[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION AND JUDGMENT ENTRY
* * * * *
This is an appeal from a judgment entry filed by the Bryan Municipal Court on September 5, 1997, in which the court ruled that appellant, Dilly Door Company, was entitled to $1,501.50 as payment for a roof appellant put on the house where appellee, Mary Grymonprez, lives. Appellant believes it is entitled to a higher award of money, and has presented three assignments of error for consideration that are:
"FIRST ASSIGNMENT OF ERROR
 THE TRIAL COURT ERRED AS A MATTER OF LAW IN FINDING THAT THE APPELLANT AND THE APPELLEE DID NOT ENTER INTO AN IMPLIED CONTRACT FOR THE REPLACEMENT OF THE ROOF FOR $5,675.00, AND THE REPLACEMENT OF SHEATHING AT A REASONABLE VALUE.
"SECOND ASSIGNMENT OF ERROR
 THE COURT ERRED AS A MATTER OF LAW IN FINDING THAT THE REASONABLE VALUE FOR THE REPLACEMENT OF THE ROOF WAS $2,837.50.
"THIRD ASSIGNMENT OF ERROR
 THE COURT ERRED AS A MATTER OF LAW IN FINDING THAT THE REASONABLE VALUE FOR LABOR AND MATERIAL FOR THE REPLACEMENT OF THE SHEATHING WAS $1,664.00."
In support of its first assignment of error, appellant argues that the trial court erred when it found that appellant must rely upon quantum meruit to recover the value of the goods and labor it provided when it put a roof on the house where appellee lives. Appellant states that it had an implied contract with appellee to replace the roof for a fixed price of $5,675, and to replace sheathing at a reasonable value.
Appellee responds that under Ohio law, an implied contract includes a promise that the work will be performed in a skilled and workmanlike manner. Appellee argues that the evidence in this case showed that appellant did not perform the roofing job in a skilled and workmanlike manner. The failure to do the work in a skilled and workmanlike manner is a breach of any implied contract that may have existed. Accordingly, appellee states, the trial court correctly turned to quantum meruit to determine the value of the materials and labor appellant provided to appellee.
The Second District Court of Appeals considered a case that required a discussion of the different forms of contracts recognized by Ohio courts. Caras v. Green Green (June 28, 1996), Montgomery App. No. 14943, 15089, unreported. The Caras
court stated, in pertinent part:
 "A quasi-contract is a contract implied in law. Hummel v. Hummel (1938), 133 Ohio St. 520, 525, 14 N.E.2d 923. Quasi-contracts are to be distinguished from express contracts and contracts implied in fact.
 "There are three classes of simple contracts; express, implied in fact, and implied in law. Keener on Quasi Contracts (1893), 3. In express contracts the assent to its terms is actually expressed in offer and acceptance. In contracts implied in fact the meeting of the minds, manifested in express contracts by offer and acceptance, is shown by the surrounding circumstances which make it inferable that the contract exists as a matter of tacit understanding. In contracts implied in law there is no meeting of the minds, but civil liability arises out of the obligation cast by law upon a person in receipt of benefits which he is not justly entitled to retain and for which he may be made to respond to another in an action in the nature of assumpsit. Contracts implied in law are not true contracts; the relation springing therefrom is not in a strict sense contractual but quasi-contractual or constructively contractual. Id.; see, also, Rice v. Wheeling Dollar Savings Trust
(1951), 155 Ohio St. 391, 99 N.E.2d 301; 1 Williston on Contracts (4th Ed. 1990), Sections 1:5 and 1:6.
"* * *
 "A quasi-contract `is a legal fiction that does not rest upon the intention of the parties, but rather on equitable principles in order to provide a remedy. The two remedies most often associated with quasi-contracts are restitution and quantum meruit. Each of these remedies presupposes some type of unjust enrichment of the opposing party.' Paugh Farmer, Inc. v. Menorah Home for Jewish Aged (1984), 15 Ohio St.3d 44, 46, 472 N.E.2d 704 (emphasis in the original).
 "Quantum meruit means `as much as deserved.' Sonkin Melena Co., L.P.A. v. Zaransky (1992), 83 Ohio App.3d 169, 175, 614 N.E.2d 807. `Quantum meruit is a doctrine derived from the natural law of equity, the basic concept of which is that no one should be unjustly enriched who benefits from the services of another. In order to prevent such an unjust enrichment, the law implied a promise to pay a reasonable amount for the services rendered . . ., in the absence of a specific contract.'Id.
 "The elements of an action in quasi-contract on a claim of unjust enrichment are a benefit conferred, knowledge of the benefit by the receiving party, and a retention of the benefit under circumstances which would make it unjust to do so without payment. Advanced Marketing Services, Inc. v. Dayton Data Processing, Inc. (March 6, 1992), 1992 Ohio App. LEXIS 994, Montgomery App. No. 12607, unreported, at 4; see also Hambleton v. R.G. Barry Corp (1984), 12 Ohio St.3d 179, 183, 465 N.E.2d 1298." Id.
Appellant in this case is arguing that the trial court should have ruled that there was an implied contract in fact, rather than an implied contract in law, and should have awarded it the full amount that the parties agreed to when they entered into the contract.
This court agrees that the record shows that there was a meeting of the minds of the parties in this case that appellant would put a roof on the house where appellee lives in exchange for $5,675 and would replace sheathing as needed at a reasonable value. Testimony from the outside salesman for appellant and from appellee and her sister showed that a written proposal containing those terms was prepared by the salesman and given to appellee. Appellee's sister called appellant by telephone to accept the proposal. In response, appellant's workmen arrived at the house where appellee, her sister and her elderly mother lived and put a roof on the house. Therefore, an implied contract in fact did exist under the circumstances in this case.
However, we also agree with appellee that under the law in Ohio, a breach of a contract to install a roof occurs when the roof leaks right after installation and for several years thereafter. See Kocisko v. Charles Shutrump Sons Co. (1986),21 Ohio St.3d 98, 99 (statute of limitations for breach of contract applied to suit for damages caused by leaky roof). The undisputed evidence in this case shows that the roof in question in this case was not installed in a workmanlike manner. Testimony from witnesses presented by appellant and appellee shows that: (1) appellant's workmen failed to put flashing around the chimney before the shingles were installed, resulting in a leak that brought water into a closet in the house every time it rained for two years after the roof was installed; (2) there was a second leak on the porch of the house that was eventually fixed by appellant; (3) the roof edges look "like a roller coaster" because appellant's workmen did not change the perimeter boards when they tore off wooden shingles and replaced them with asphalt shingles; (4) the soffits of the house were damaged because the workmen used nails that were too long, and repairs made by an independent contractor hired by appellant to correct the damage may cause the soffits to rot faster; (5) the new rain gutters put on the house just before appellant was hired to replace the roof were bent and no longer hang correctly because of damage done by appellant's workmen; and (6) several shingles were loose and had to be replaced or patched.
Accordingly, the trial court in this case did not err when it did not award appellant the full benefit of the bargain entered into in the implied contract. The trial court correctly concluded that the breach of the contract by appellant rendered the contract unenforceable and turned to equity to create an implied contract at law. The award of damages based upon quantummeruit was not in error. Appellant's first assignment of error is not well-taken.
In support of its second assignment of error, appellant argues it substantially performed the contract when it put the roof on the house where appellee lives. Appellant therefore argues that the correct method of awarding payment to appellant is to award the full amount agreed to by the parties in the implied in fact contract minus "any damages sustained by the owner resulting from the builder's failure to strictly comply with the agreement." Appellant argues that the only damages testified to by appellee were $600 she paid to a second roofer to stop the leak around the chimney. Appellant therefore states that it should be awarded the contract price of $5,675 minus $600 as the value of the roof it installed.
As we noted in our discussion of the first assignment of error, the evidence in this case supports a finding that appellant did not substantially comply with the terms of the implied contract. The trial court therefore acted properly when it created an implied contract at law and awarded appellant payment for the goods and services it provided to appellee pursuant toquantum meruit. The trial court heard the evidence and was in the best position to determine the value of appellant's services. For the reasons we have already explained appellant's argument that it was entitled to the contract price minus $600 is not persuasive. Appellant makes no other argument to support a finding that it deserves more compensation for the value of its services. This court therefore finds the trial court did not abuse its discretion when it ruled that "the reasonable value of the work done in replacing the roof is $2,837.50." Appellant's second assignment of error is not well-taken.
In support of its third assignment of error, appellant argues that the trial court erred when it found that the reasonable value for labor and material for the replacement of the sheathing on the house where appellee lives was $1,664. Appellant argues that it informed appellee that it would charge $1 per square foot of sheathing and that three thousand eight hundred square feet of sheathing could be required. Appellant states:
 "The only evidence in the record as to the reasonable value for the labor and materials for installing the sheathing was $1.00 per square foot."
Our review of the record does not support appellant's statements. First, appellee and her sister testified that they were never told by appellant's employees that they would be charged $1 per square foot for sheathing. They did testify that they understood that some sheathing would be required, and that the cost of the sheathing would be in addition to the proposed bid of $5,675. They also testified that they expected appellant would charge them a reasonable cost for the sheathing.
Appellant's outside salesman testified that the average cost of the sheathing was between $8 or $9 for thirty-two square feet. He stated that appellant charged $1 per square foot because that included the cost of "cutting the sheet, the nails it takes to put the sheet down, the labor it takes to get the sheet on the roof and the labor it takes to tear off the old sheeting [sic] or any type of preparation * * *." Appellant's manager confirmed that at the time the job was done for appellee, sheathing could be purchased for $8 or $9 for thirty-two square feet.
Based upon the testimony in this case relating to the unworkmanlike installation of the sheathing and the roof, the trial court could determine in equity that appellant was not entitled to its customary compensation amounts for the labor costs it figured into the sheathing estimate. Accordingly, this court finds that the trial court did not abuse its discretion when it ruled that appellant was entitled to $1,664 for the replacement of the sheathing. Appellant's third assignment of error is not well taken.
The judgment of the Bryan Municipal Court is affirmed. Appellant is ordered to pay the court costs of this appeal.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
 __________________________________ Peter M. Handwork, P.J.
JUDGE
 ______________________________ George M. Glasser, J.
JUDGE
 _______________________________ Richard W. Knepper, J.
JUDGE
CONCUR.