DECISION AND JUDGMENT ENTRY
This is an appeal from the judgment of the Lucas County Court of Common Pleas, Probate Division, which awarded appellants, Keith and Melissa Keisser, $23,428 for the quantum meruit value of the services they rendered to Joseph Bishop, decedent, for his care and comfort toward the end his life. For the reasons that follow, we affirm the decision of the trial court.
The relevant facts are as follows. Mr. Keisser knew Bishop for many years, beginning when Mr. Keisser was a boy. Bishop and Mr. Keisser were insurance agents and their relationship was both social and work related. From the early 1980's to the time of Bishop's death, Mr. Keisser assisted Bishop during periods of illness or disability. In August 1997, Bishop made Mr. Keisser the executor of his estate and gave Mr. Keisser power of attorney over Bishop's affairs.
Bishop was eventually hospitalized in June 1999. Upon discharge from the hospital, Bishop ended up staying with appellants to recuperate from June 10, 1999 to June 14, 1999. While Bishop was with appellants, they made trips for medication and attempted to monitor his medical condition.
Within days of leaving appellants' home, Bishop was again hospitalized. While in the hospital, Mr. Keisser visited Bishop daily, saw to matters concerning Bishop's care and treatment, and at one point, specifically exercised his power of attorney to keep Bishop on a ventilator.
Bishop was eventually released from all medical facilities on September 21, 1999. Not wanting to be placed in a nursing home, Bishop asked appellants if he could stay with them. While at appellants's home, appellants took Bishop to and from doctors' appointments, for a total of thirty-two one-way trips; cooked for him, taking into account his lack of teeth and dietary needs; changed him at least six or seven times a day; took him to the bathroom when he got stronger; cleaned his bed linens, usually daily due to the sputum he would cough up; and cleaned the peg tube attached to his stomach twice daily, as well as, cleaned up the bile that would back up from his stomach tube when he coughed. Mr. Keisser also handled Bishop's personal affairs, such as changing the locks on Bishop's house, taking care of his house when the pipes froze, and going through his mail. Mrs. Keisser assisted with Bishop's financial matters by paying his bills, ninety checks were written in total.
Bishop's stay with appellants ended on December 6, 1999 when Bishop moved back to his own home, where he was to live with his son. Bishop, however, was again admitted to the hospital on December 10, 1999 and stayed there until January 5, 2000. He was then moved to the Darlington House for a period of time, returned to the hospital, and was eventually discharged to Hospice, where he died on February 17, 2000. After the time Bishop left appellants' home, appellants continued to assist Bishop with the details of his hospitalization and personal affairs. Following Bishop's death, Mr. Keisser arranged Bishop's burial, in accordance with his wishes, and secured Bishop's property.
On June 5, 2000, appellants filed a claim against the estate requesting compensation for the services they rendered to Bishop, totaling $30,923. Appellants' claim consisted of the following expenses:
 $330 for utilities $203 for professional carpet cleaning $800 for livery (32 one-way trips) $8,610 for health aid (574 hours) $4,770 for dietary matters (318 hours) $1,845 for laundry and housekeeping (123 hours) $11,565 for power of attorney services (771 hours at an average rate of $15 per hour) $1,400 for "Elder Care Advocates monthly monitor fee" $1,400 for bookkeeping and banking (28 hours)
Appellants amended their claim against the estate on July 11, 2000 and sought recovery on a quantum meruit basis, totaling $46,901. The new total amount claimed by appellants reflected an increase in the hourly rate for the power of attorney fee charged by Mr. Keisser, from $15 per hour to $30 per hour, and additional charges for room and board and "Family Visits."
Joyce Kennedy,[1] appellee, a beneficiary under Bishop's last will and testament, contested appellants' claim. The matter came for trial on January 16, 2001. The trial court awarded appellants $23,428 of the $46,901 they requested as compensation and allowed appellants' claim as follows:
 "1) Room and board. The Court hereby finds that the daily room and board amount charged by Darlington House is a proper number to utilize in computing the amount due the Keissers. This amount is $146.00 per day, and the Court finds that additional services provided by the Keissers that would not have been provided at Darlington House were the result of their care and affection for Mr. Bishop and therefore a gift to him. $146.00 times 83 days equals $12,118.00 allowed for care services.
 "2) Power of attorney fees. The Court hereby allows the claim for power of attorney fees as follows: 754 hours times $15.00 per hour equals $11,310.00 for power of attorney fees."
It is from this judgment that appellants appeal and raise the following assignments of error:
 "A. The probate court erred in determining the proper measure of restitution under appellants' quantum meruit claim to be institutionalized nursing home services instead of the market value of home care services actually provided by appellants.
 "B. The probate court erred in determining the proper measure of restitution under appellants' quantum meruit claim for attorney in fact services rendered."
Appellants argue in their first assignment of error that the trial court's quantum meruit award of restitution for in-home care was against the manifest weight of the evidence, insofar as the trial court applied the value of institutionalized nursing home services instead of the market value of home care services, which appellants provided. We disagree.
We begin with the proposition that we must defer to the trial court as the finder of fact. The trial court was in the best position to view the witnesses, observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.[2] As such, a reviewing court should not substitute its judgment for that of the trial court.[3] The decision of the trier of fact, be it judge or jury, will not be reversed as being against the manifest weight of the evidence as long as it is supported by some competent, credible evidence going to all the essential elements of the case.[4]
Appellants' claim is based on the theory of quantum meruit. "Quantum meruit is generally awarded when one party confers some benefit upon another without receiving just compensation for the reasonable value of services rendered."[5] The award of damages for a quantum meruit claim is the measure of the reasonable value of the materials or services provided, less any damages suffered by the other party.[6]
In this case, appellants' expert, Julie Coyle, a geriatric care manager, with degrees in social work, social services, and health education, testified regarding the customary and reasonable fees for elderly services. Coyle testified that rates for assisted living facilities did not include personal care, nursing care, additional laundry service, and other miscellaneous charges. Coyle broke down the costs of caring for the elderly into categories such as nurse's aid, $15 per hour; ambulette service, $80 each way; geriatric care manager, $100 per hour; and room and board, $140 per day. Coyle also testified that appellants' charges were reasonable, such as, $15 per hour for companionship, dietary and laundry services, $25 each way for transportation, $30 per hour for power of attorney services, conducted by an attorney, and $50 per day for room.
Appellee's expert's testimony, however, was very different. Susan Banks, L.P.N. admissions coordinator and resident service director at Darlington Nursing Rehab, a long term care facility, testified that the rate for a private room in 1999 was $146 per day. Banks described the services received for $146 per day to be all inclusive. Banks testified that the fee included meals, room, laundry, social services, nursing care, medication (delivered to the residents), incontinent supplies, personal supplies, and would have included cleaning out a feeding peg and providing twenty-four hour care if necessary. The facility would also interact with family members, make medical and nursing assessments, and determine the appropriate levels of care required. The Darlington facility provided certified nursing assistants, licensed practical nurses, registered nurses, physical therapists, occupational therapists, social workers, and financial bookkeepers. The ratio of resident to certified nursing assistant was eight or ten to one in 1999.
Clearly, the trial court was provided competing testimony to consider in making its determination concerning the value of appellants' care and services provided to Bishop. The Darlington facility would have, and did for a period of time, provide all the care that appellants provided Bishop. The cost for such services was established to be $146 per day. Additionally, we note that the Darlington facility was not merely an assisted living facility, as described by Coyle; rather, it provided twenty-four hour, all inclusive, care.
There are obvious benefits that may exist in an in-home care situation that may not exist in a nursing home setting. Nevertheless, the trial court held that the "additional services" provided by appellants, that would not have been provided by the Darlington facility, "were the result of their care and affection for Bishop and therefore a gift to him." This finding is amply supported by the record.
Bishop asked Mr. Keisser on a couple of occasions what the services he was providing Bishop were going to cost. Mr. Keisser told Bishop something to the effect that he should not worry about it, they would discuss matters when Bishop was stronger and healthier, he was not taking care of Bishop for the money, he was doing it because he loved Bishop, he was like family, he has known him since childhood and was like a father to him. Mrs. Keisser, in fact, testified that Bishop was called "Grandpa Joe" by their family. Mrs. Keisser also testified that doing "extra things for people," such as making home cooked meals for Bishop, was in her nature.
Accordingly, we find that the trial court's judgment is supported by competent, credible evidence and is not against the manifest weight of the evidence. Appellants' first assignment of error is therefore found not well-taken.
Appellants argue in their second assignment of error that the trial court also erred in assessing the value of the personal services Mr. Keisser provided Bishop pursuant to his power of attorney status and Mrs. Keisser's accounting services. In particular, appellants argue that the testimony supports an award of $30 or $100 per hour for the power of attorney services Mr. Keisser provided Bishop, but that there is no testimony to support an award of $15 per hour for these services. We disagree.
According to Mr. Keisser, his "power of attorney" services included (1) caring for Bishop's home, which entailed, calling a locksmith to change the locks on Bishop's home several times, checking on the house when the pipes froze, and resetting the burglar alarm; (2) communicating with nursing staff and doctors concerning Bishop's care; (3) communicating with Bishop's family concerning his progress; (4) having office staff open Bishop's mail, sorting through it, and forwarding the bills to be paid to Mrs. Keisser; (5) acting as the go-between with Bishop's attorney regarding financial matters; and (6) making the funeral arrangements. We also note that the time charge sometimes included numerous hours spent at the hospital or care facilities, up to nine hours in one day, including transit time.
As evidenced by the services rendered, none required the expertise of an attorney or even a person with business knowledge. Nevertheless, Coyle placed a value of $100 per hour on these services. Mr. Keisser, however, valued his services significantly lower. On June 5, 2000, Mr. Keisser, who holds a Juris Doctor degree, filed a signed summary of the services he provided to Bishop. In this summary, Mr. Keisser represented that, according to Allied Home Health, the average cost of the power of attorney services he provided Bishop was valued at $15 per hour. Mr. Keisser doubled this charge on July 11, 2000. In an attempt to explain this increase, Mr. Keisser merely testified that he was informed by Coyle that he was not charging enough, so he increased his demand, albeit to an amount far less than the "market" price for a "professional power of attorney." Mr. Keisser also testified that he called a company called Elder Care Advocates to research what he should charge for his services. Although he did not testify as to the amount, Mr. Keisser indicated that the fee was greater the more involved the services became, such as talking with medical personnel and making medically related decisions.
The services Mr. Keisser performed under the guise of his "power of attorney" status were extremely varied in nature and, at times, required nothing more than Mr. Keisser sitting with Bishop in the hospital. Hence, according to Mr. Keisser's testimony, the value of his hours of service varied as well. Under the circumstances, we find that it was appropriate for the trial court to average the hourly rate for these services. Accordingly, we find that the trial court's valuation of Mr. Keisser's power of attorney time was not against the manifest weight of the evidence because (1) some of the services charged under "power of attorney" would have been included in the $146 per day fee charged by the Darlington facility, had it been taking care of Bishop rather than appellants; (2) none of these hours required any particular expertise; and (3) Mr. Keisser valued the services he himself provided to be worth $15 on average per hour.
We further find that, insofar as Mr. Keisser was Bishop's fiduciary, Mrs. Keisser performed the bookkeeping functions on Mr. Keisser's behalf. Accordingly, we find that the trial court correctly awarded appellants nothing beyond that which Mr. Keisser was entitled for his power of attorney services.
Appellants second assignment of error is therefore found not well-taken.
On consideration whereof, the court finds substantial justice has been done the party complaining and the judgment of the Lucas County Court of Common Pleas, Probate Division, is affirmed. Appellants are ordered to pay the court costs of this appeal.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Melvin L. Resnick, J., Richard W. Knepper, J., Mark L. Pietrykowski,P.J., JUDGES CONCUR.
[1] There is a discrepancy throughout the documents in the record regarding appellee's first name. According to her direct testimony, her first name is "Joyce," not "Jacqueline."
[2] Seasons Coal Co., Inc. v. Cleveland (1984), 10 Ohio St.3d 77,80.
[3] Id.
[4] C.E. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, syllabus; Vogel v. Wells (1991), 57 Ohio St.3d 91, 96.
[5] Aultman Hosp. Assn. v. Community Mut. Ins. Co. (1989),46 Ohio St.3d 51, 55, citing Fox Associates Co., L.P.A. v. Purdon
(1989), 44 Ohio St.3d 69, and Rice v. Wheeling Dollar Savings TrustCo. (1951), 155 Ohio St. 391.
[6] See Hughes v. Oberholtzer (1954), 162 Ohio St. 330, 335. See also, National City Bank v. Fleming (1981), 2 Ohio App.3d 50; U.S. HealthPractices, Inc. v. Blake (Mar. 22, 2001), Franklin App. No. 00-AP-1002, unreported; and Loyer v. Loyer (Aug. 16, 1996), Huron App. No. H-95-068, unreported.