OPINION JUDGMENT ENTRY
{¶ 1} Appellant, Frederick A. Korey (as Executor of Vincent P. Korey's "Attorney Korey's" estate), appeals from a judgment entry of the Stark County Court of Common Pleas granting summary judgment to appellees, Richard A. Gross ("Gross") and Attorney John R. Guia ("Guia").
{¶ 2} On approximately April 3, 1996, Attorney Vincent Korey and Gross entered into a contract to retain Attorney Korey's representation for all claims arising from a March 23, 1996 automobile accident. The language of this contract indicated that it was to cover all claims arising from the automobile accident. Attorney Korey set his contingent fee at thirty-three percent of the gross proceeds received.
{¶ 3} The case against the tortfeasor (Gina Kohler Roberts) and her insurance company (Progressive) was settled in the amount of $23,000 on April 14, 1998. Attorney Korey received a fee of $5,000, and although Guia did not have a separate contract with Gross, Attorney Korey gave Guia $2,000 of the $7,000 attorney fee for work the latter did on the case.
{¶ 4} Toward the end of the settlement process with Progressive, Gross approached Attorney Korey about the possibility of filing a claim under Gross' Underinsured Motorist ("UIM") coverage with Erie Insurance Company ("Erie"). It was at this time that Attorney Korey realized he possibly would not survive his bout with cancer nor see the UIM case to completion. Thus, he approached Guia about working with him on the UIM case.
{¶ 5} Neither party disputes that Attorney Korey contributed to the development of the UIM case. There were numerous telephone conversations between Attorney Korey and Guia, where Guia would write down Attorney Korey's ideas and contribute some of his own. The initial demand figure issued to Erie was $257,000. This figure was drawn up by Attorney Korey and Gross in determining lost wages, pain, and suffering. Guia also claims to have taken part in the formulation of this demand figure.
{¶ 6} As Attorney Korey's health grew worse, he relied more heavily on Guia's actions to further the case. Guia claims that around June or July 1998, Attorney Korey gave the UIM case to him, because Attorney Korey knew he would not survive his bout with cancer.[1]
{¶ 7} Attorney Korey passed away on August 5, 1998. At some point prior to his death, Attorney Korey told Gross that Guia was capable of taking the case, and that Gross should see Guia if he wished to continue the matter. On August 31, 1998, Gross signed a contingent fee contract with Guia for continuing the UIM case. This contract provided a fee of twenty-five to forty percent depending on settlement, trial, or appeal conditions. At this time, Erie was offering a settlement figure of $50,000.
{¶ 8} Between August 31, 1998, and the UIM case's settlement date of November 4, 1998, Guia conducted four telephone negotiation sessions that brought the offer to over $100,000. When Erie stated a final figure of $128,000, Guia spoke with Gross and Gross decided to settle the case. Guia reimbursed Gross $6,000 of the $32,000 attorney fee, because he wanted Gross to receive over $100,000 from the settlement.
{¶ 9} On several occasions, appellant asked Guia about the status of the UIM case. When it became obvious that no share of the attorney fee was forthcoming, appellant filed a complaint with the Ohio State Bar Association seeking arbitration of a fee splitting dispute with Guia.
{¶ 10} In the initial complaint, appellant alleged that Attorney Korey wrote a note indicating that Guia was to receive twenty percent of the attorney fee and the estate was to receive eighty percent of the fee. However, before the arbitration session commenced, appellant changed his argument to a theory of quantum meruit. The arbitration panel made the following findings: (1) Gross and Attorney Korey had an attorney-client relationship before Attorney Korey's death; (2) Attorney Korey was assisted by Guia in representing Gross, but no attorney-client relationship existed between Guia and Gross until Attorney Korey died; (3) Gross and Guia had an attorney-client relationship after August 31, 1998 until the end of the UIM case; (4) a fee sharing agreement between Attorney Korey and Guia did not exist; and (5) Gross' representation by Attorney Korey and Guia was sequential in nature and not concurrent. After making these findings, the arbitration panel decided that it did not have jurisdiction to handle a quantum meruit claim.
{¶ 11} Appellant then filed suit in the Stark County Court of Common Pleas, seeking recovery for the value of services that Attorney Korey had rendered. The initial defendants to the action were Guia, Gross, and Erie. Appellant was seeking recovery of $35,000, under the theory of quantum meruit.
{¶ 12} All three defendants filed motions for summary judgment. Erie's motion also included a Civ.R. 12(B)(6) motion to dismiss for failure to state a claim. Both of Erie's motions focused on the lack of duty owing from Erie to appellant for any attorney fee the UIM case may have generated, and that Attorney Korey did not unjustly enrich Erie, because he performed no services for Erie. Appellant voluntarily dismissed the claim against Erie.
{¶ 13} Appellees' motion for summary judgment was based on the alleged gift of the attorney fee to Guia, and a statement that Gross was not unjustly enriched. The lack of unjust enrichment argument related to Gross having already paid Guia for services rendered, thus paying quid pro quo for Gross may have received. Alternatively, appellees moved for summary judgment on the basis that appellant was unable to accurately calculate and/or prove damages.
{¶ 14} Appellant responded to appellees' motion for summary judgment by filing his own affidavit indicating that Attorney Korey had made him promise that he would pursue the attorney fee associated with the UIM case, and that Attorney Korey had never informed appellant of any waiver of the fee. Appellant also included a copy of an unsigned and undated note written in Attorney Korey's hand that purports to claim eighty percent of the attorney fee for the estate and give twenty percent to Guia. Additionally, appellant submitted copies of letters sent by Attorney Korey to Erie.
{¶ 15} On November 25, 2002, the trial court granted summary judgment in favor of appellees on the ground that appellant had no admissible evidence that could counter appellees' gift statements. Appellant has brought this timely appeal asserting a single assignment of error:
{¶ 17} "The trial court erred in its granting of summary judgment based on the alleged gift of the UIM case from Atty. Korey to Guia."
{¶ 18} In his sole assignment of error, appellant states that there is an issue of material fact concerning whether Attorney Korey gave the UIM case to Guia.
{¶ 19} Because the granting of summary judgment is a question of law, the standard of review for appeals from summary judgment is de novo. See Dupler v. Mansfield Journal (1980),64 Ohio St.2d 116. Therefore, the appellate court does not give deference to the trial court's decision, but instead makes its own determination of whether summary judgment was appropriate. Id. Further, the appellate court may address the components of the motion that the trial court did not. See Ind. Energy Consumersof Ohio Power Co. v. Pub. Utilities Comm. of Ohio (1994),68 Ohio St.3d 559, 563 (as to questions of law, reviewing courts have complete and independent power of review).
{¶ 20} Our analysis of appellant's sole assignment of error begins with Civ.R. 56, and the case law interpreting Civ.R.56. This rule governs the granting of summary judgment
{¶ 21} For a party to prevail on a summary judgment motion, the following must exist: (1) there is no issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can only come to a conclusion which is against the non-moving party. Alphacore v. Stripmatic Products,Inc. (1996), 111 Ohio App.3d 725, 733. All evidence presented at summary judgment must be construed in a light most favorable to the non-moving party. Harless v. Willis Day Warehousing Co.
(1978), 54 Ohio St.2d 64, 66; Civ.R. 56(C). Any affidavits produced in opposition to the motion for summary judgment must indicate specific facts showing a material issue of fact for the trier of fact. Civ.R. 56(E). Further, any facts stated in the affidavit must be admissible as evidence at trial. Tokles Son,Inc. v. Midwestern Indemn. Co. (1992), 65 Ohio St.3d 621, 631; Civ.R. 56(E).
{¶ 22} As stated above, the trial court granted summary judgment to appellees on the basis of Attorney Korey's gift of the case. Because the standard of review is de novo, this court must now determine whether an issue of material fact exists with regard to this contention.
{¶ 23} It is impossible to assign rights and delegate duties of a contract that is personal in nature. Starchroom Publishing Co.v. Threlkeld Engraving Co. (1920), 13 Ohio App. 281, 283. Further, the determination of whether a personal contract exists requires consideration of: the language of the parties, the intentions of the parties, and the nature of the contract. Lucasv. The J.H. Gross Motor Car Co. (1927), 32 Ohio App. 183, 185. A contract between an attorney and his client is by nature personal, and depends on the skills and personality of the named attorney. Hordin v. Cleveland (1945), 77 Ohio App. 491. As such, without express permission from Gross, Attorney Korey could not assign the rights from the contract to Guia, nor could he delegate the responsibilities to Guia. Id. Additionally, because any attorney fee splitting/transfer between attorneys of different firms is governed by D.R. 2-107, Gross must have expressly consented to any change in his obligation to pay an attorney fee. D.R. 2-107(A).
{¶ 24} Due to the personal nature of the attorney-client contract, Attorney Korey could not have given the case to Guia. Thus, the only option available would have been a fee-splitting arrangement. Because Attorney Korey and Guia were attorneys in different firms, any fee-split would require Gross' express consent, which was never given. Therefore, the trial court erred when it granted summary judgment to appellees on the basis of a "gift" of the UIM case to Guia.
{¶ 25} However, the trial court did not address appellees' alternative grounds for summary judgment. Because appellate review of summary judgment decisions is de novo, this court will now address appellees' alternative grounds. Portage Cty. Bd. ofCommrs. v. Akron, 156 Ohio App.3d 657, 2004-Ohio-1665, at ¶ 57.
{¶ 26} In the alternative, appellees' motion for summary judgment stated that appellant cannot prove the amount of damages, because there is no indication of how much time Attorney Korey spent on the UIM case.
{¶ 27} Analysis of this alternative ground begins with a determination of whether compensation for a "discharged" attorney is quantum meruit when the existing contract provided for a contingency fee. In Reid, Johnson, Downes, Andrachik Websterv. Lansberry (1994), 68 Ohio St.3d 570, the Ohio Supreme Court directly addressed this issue. In Reid, the client had initially signed a contingent fee agreement with the law firm covering litigation arising from an automobile accident. Later, the client signed a separate contingent fee contract with a former member of the firm who had split from the firm. The law firm then filed suit to recover attorney fees from the client. The court held that "pursuant to [Fox Assoc. Co., L.P.A. v.Purdon (1989), 44 Ohio St.3d 69], * * *, and even if a contingent fee agreement is in effect at the time of the discharge, the discharged attorney recovers on the basis of quantum meruit, and not pursuant to the terms of the agreement."Reid at 573.
{¶ 28} To recover under quantum meruit, the appellant must prove the reasonable value of the services rendered. Fox at 77. D.R. 2-106 provides a comprehensive listing of factors for determining the value of services rendered. Foremost on the list is the time and labor required, with the remaining factors concerning modifications of the value of the time spent. D.R. 2-106(B); Reid at fn. 3. The Reid court further stated that even though attorneys frequently do not keep detailed records of time spent on contingent fee cases, an attorney has the responsibility of keeping an accurate record of time and resources expended. Reid at 577, fn. 3.
{¶ 29} While it may well be possible to establish the amount of time put into a case by expert analysis of documents, this reverse calculation is not applicable here. Appellant failed to meet the trial court's deadline for identifying its experts. As such, appellant was barred from introducing expert testimony regarding the amount of time Attorney Korey spent on the UIM case.
{¶ 30} Appellant's situation falls within the circumstances of footnote three in Reid. Appellant did not present evidentiary materials of the time that Attorney Korey spent on the Gross UIM case and the nature of the effort expended, other than appellant's statement that Attorney Korey "spent every waking moment on the Gross case." Without a showing of time spent, together with the type of professional work involved, appellant has not met the burden of proving the value of Attorney Korey's services as they relate to the Gross case. Therefore, under theFox and Reid line of cases, appellant cannot prove damages, and appellees are entitled to summary judgment.
{¶ 31} Assuming arguendo that appellant produced information concerning time and effort spent by Attorney Korey, Gross would be entitled to summary judgment because he has not been unjustly enriched. Specifically, there was evidence that just prior to his death, Attorney Korey communicated with Gross, effectively resigning and recommending Guia. No claim or bill of services rendered to date was made at that time. Thus, when Gross paid the attorney fee to Guia, he disgorged any enrichment gained beyond compensation for his injuries. Rice v. Wheeling Dollar Sav. andTrust Co. (1951), 155 Ohio St. 391. Therefore, appellant cannot meet the requirement of showing unjust enrichment for a quantum meruit claim to lie against Gross, as he never put Gross on notice that he felt he himself was owed a separate fee. Id.
{¶ 32} A party moving for summary judgment may make a showing that the nonmoving party lacks sufficient evidence to prove their case. Celotex Corp. v. Catrett (1986) 477 U.S. 317. The moving party must inform the court of the specific portions of the record that show a lack of evidence to support the non-moving party's claims. Vahila v. Hall (1997), 77 Ohio St.3d 421, 428
(interpreting Celotex); Dresher v. Burt (1996)75 Ohio St.3d 291-292. Once the proper description has been made, the moving party need not support its motion with affidavits. Vahila at 428; Burt at 293. In this case, appellees specifically stated that appellant had not identified an expert before the trial court's deadline, and that in appellant's deposition appellant indicated that he had no evidence to support the amount of work Attorney Korey performed. Thus, appellees met the requirements put forth in Vahila, and the burden of producing evidence fell on appellant. Vahila at 428; Civ.R. 56(E). Appellant was not able to produce evidence of the time Attorney Korey spent on the UIM case. Without such evidence, appellant could not prove all the elements of his quantum meruit claim. Reid at 573. Therefore, appellees were entitled to summary judgment. Civ.R. 56(E).
{¶ 33} Although this court disagrees with the trial court's grounds for granting summary judgment to appellees, this Court holds that granting summary judgment to appellees was appropriate. Thus, to this extent, appellant's sole assignment of error lacks merit, and the judgment of the trial court is affirmed.
Ford, P.J., Eleventh Appellate District, sitting by assignment, Nader, J., Ret., Eleventh Appellate District, sitting by assignment, concur.
For the reasons stated in the Opinion of this court, the sole assignment of error lacks merit. It is the judgment and order of this court that the judgment of the trial court is affirmed.
Judge Ford, P.J., Eleventh Appellate District, sitting by assignment, Judge Nader, J., Ret., Eleventh Appellate District, sitting by assignment, concur.
[1] We note that while Attorney Korey could not "give" the case to Guia, Attorney Korey could have withdrawn from the case. D.R. 2-107.