*became common practice, the insurance industry might extract coercive arrangements from their insureds, destroying the concept of liability and litigation insurance.*

*Shoshone First Bank,* 2 P.3d at 516 (quoting *America States Ins. Co. v. Ridco, Inc., Riddles Jewelry, Inc., and Ken B. Berger*, Civ. No. 95CV158D (D.Wyo.1999)) (emphasis added). As the above quote demonstrates, the result reached by the majority opinion—a result that is not required under Ohio law—opens the door to bad policy and future coercive practices by insurance companies. *Id*.

Of course, Ohio courts do enforce reservations of rights, and this is not to suggest otherwise. *See, e.g., Turner*, 638 N.E.2d at 179. However, the point here is simply that the insurer cannot pursue recoupment of rights when the insured did not preserve the right to do so in the underlying insurance contract. In fact, the insurer in the instant case was so unsure of its legal rights and obligations that it sought clarification of its duties by filing a declaratory judgment action.

Because the underlying insurance contract involved in this case did not provide for recoupment of attorney fees and no implied-in-fact contract was formed by way of United National's unilateral reservation of rights letter, United National is not entitled to recoup the costs it paid in defending SST. Moreover, strong policy considerations support our refusing to expand Ohio insurance law to find rights to recoupment of attorney fees where such rights, at a minimum, do not even exist in the insurance contract. Because the majority reaches the contrary conclusion, I respectfully dissent.

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0384P (6th Cir.)
File Name: 02a0384p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————

UNITED NATIONAL
INSURANCE COMPANY,
          *Plaintiff-Appellant,*

          v.

SST FITNESS CORPORATION,
          *Defendant-Appellee.*

No. 00-4239

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 97-00113—Herman J. Weber, District Judge.

Argued: March 19, 2002

Decided and Filed: November 4, 2002

Before: BATCHELDER and CLAY, Circuit Judges;
CARR, District Judge.[*]

———————

[*]The Honorable James G. Carr, United States District Judge for the Northern District of Ohio, sitting by designation.

1

_____

**COUNSEL**

**ARGUED:** James Christian Nielsen, NIELSEN, HALEY & ABBOTT, San Francisco, California, for Appellant. Lawrence R. Elleman, DINSMORE & SHOHL, Cincinnati, Ohio, for Appellee. **ON BRIEF:** James Christian Nielsen, NIELSEN, HALEY & ABBOTT, San Francisco, California, for Appellant. Gerald W. Simmons, THOMPSON HINE, Cincinnati, Ohio, for Appellee.

CARR, D. J., delivered the opinion of the court, in which BATCHELDER, J., joined. CLAY, J. (pp. 17-24), delivered a separate dissenting opinion.

_____

**OPINION**

_____

JAMES G. CARR, District Judge. Plaintiff-appellant United National Insurance Company ("United National") appeals the denial of its motion, brought pursuant to 28 U.S.C. § 2202, for defense costs paid to its insured, defendant-appellee SST Fitness Corporation ("SST"). For the following reasons, we **REVERSE** the judgment of the district court and **REMAND** for further proceedings in accordance with this decision.

**BACKGROUND**

SST purchased liability insurance from United National, which agreed to provide defense costs and indemnify SST for any liability. J.A. at 49–79. When SST was sued for patent and trademark infringement, United National paid SST's defense costs. Prior to providing defense costs, United National provided a letter to SST stating, "United National reserves the right to recoup from SST any defense costs and fees to be paid subject to this reservation letter on the basis

National had a duty to pay those fees in the first place. *Cf. Matagorda County*, 52 S.W.2d at 133 (holding that there was no meeting of the minds to establish an implied-in-fact contract where the insured had consistently contested the insurer's position regarding coverage and insisted that the insurer pay under the policy).

United National clearly had other options available to it when SST requested that United National pay its attorney fees if United National believed that it had no duty to defend against the patent action. For example, United National simply could have refused to defend SST. However, in its efforts to protect itself from a potential breach of contract claim, it chose not to do so. United National should not now be allowed to force a duty onto SST that the parties did not bargain for in the underlying insurance contract. As one court wrestling with this issue aptly explained:

> The question as to whether there is a duty to defend an insured is a difficult one, but because that is the business of an insurance carrier, it is the insurance carrier's duty to make that decision. If an insurance carrier believes that no coverage exists, then it should deny its insured a defense at the beginning instead of defending and later attempting to recoup from its insured the costs of defending the underlying action. Where the insurance carrier is uncertain over insurance coverage for the underlying claim, the proper course is for the insurance carrier to tender a defense and seek a declaratory judgment as to coverage under the policy. However, to allow the insurer to force the insured into choosing between seeking a defense under the policy, and run the potential risk of having to pay for this defense if it is subsequently determined that no duty to defend existed, or giving up all meritorious claims that a duty to defend exists, places the insured in the position of making a Hobson's choice. Furthermore, *endorsing such conduct is tantamount to allowing the insurer to extract a unilateral amendment to the insurance contract. If this*

acceptance . . . ." *Berjian v. Ohio Bell Tel. Co.*, 375 N.E.2d 410, 414 (Ohio 1978); *see also Matagorda County*, 52 S.W.2d at 132 ("as a general rule, 'silence and inaction will not be construed as an assent to an offer . . . .'") (quoting 2 Williston on Contracts § 6:49 (4th ed. 1991)). Moreover, while there are exceptions to this general rule, strong policy considerations militate against allowing an insurer to unilaterally declare that it can recoup the costs of defending an insured where it is later determined that the underlying insurance policy did not cover the claim(s) asserted against the insured. As the Third Circuit has explained:

> A rule permitting such recovery would be inconsistent with the legal principles that induce an insurer's offer to defend under reservation of rights. Faced with uncertainty as to its duty to indemnify, an insurer offers a defense under reservation of rights to avoid the risks that an inept or lackadaisical defense of the underlying action may expose it to if it turns out there is a duty to indemnify. At the same time, the insurer wishes to preserve its right to contest the duty to indemnify if the defense is unsuccessful. Thus, such an offer is made at least as much for the insurer's own benefit as for the insured's. If the insurer could recover defense costs, the insured would be required to pay for the insurer's action in protecting itself against the estoppel to deny coverage that would be implied if it undertook the defense without reservation.

*Terra Nova Ins. Co. Ltd. v. 900 Bar, Inc.*, 887 F.2d 1213, 1219-20 (3d Cir.1989) (citations omitted).

Further, although SST accepted the funds in the instant case, it also vigorously defended its position in the district court and in this Court that United National indeed had a duty to pay SST's legal fees. United National cannot claim that there truly was a meeting of the minds on the issue of whether SST intended to reimburse United National for paying SST's attorney fees when SST vigorously contended that United

that no duty to defend now exists or has existed with regard to the tendered suit." J.A. at 115.

United National paid $116,706.39 to SST's counsel in the patent and trademark infringement suit. SST accepted payment of its defense costs, without objecting to United National's reservation of rights.

United National thereafter sued SST, seeking a declaratory judgment that United National owed no duty to defend or indemnify SST in the underlying infringement action. The district court granted declaratory judgment in favor of United National, and the Sixth Circuit affirmed.

United National moved, under 28 U.S.C. § 2202, for costs paid under reservation, $116,706.39, and prejudgment interest, $29,633.41. The district court denied this motion, finding that United National was a volunteer when it paid SST's defense costs and, therefore, could not recover those costs. J.A. at 185.

## STANDARD OF REVIEW

Because the district court decided questions of law, we review its judgment *de novo*. *United States v. Al-Zubaidy*, 283 F.3d 804, 812 (6th Cir. 2002) ("We review questions of law and statutory interpretation *de novo*.") (citing *Nixon v. Kent Co.*, 76 F.3d 1381, 1386 (6th Cir. 1996) (en banc); *Mumford v. Zieba*, 4 F.3d 429, 432 (6th Cir. 1993)); *see also Pro-Eco, Inc. v. Board of Comm'rs of Jay County, Indiana*, 57 F.3d 505, 508 (7th Cir. 1995) (In reviewing a district court's denial of relief in a case brought pursuant to 28 U.S.C. § 2202, the court stated, "[W]ith the district court deciding the case on pure questions of law, and in light of our circuit's decision to guard jealously the discretion afforded under the Declaratory Judgment Act, we will review the district court's denial of Pro-Eco's motion *de novo*.").

## DISCUSSION

### I. Insurer's Right to Recoupment

United National contends that, because it had no duty to defend SST in the underlying infringement action and it reserved its right to recoup defense costs, it is entitled recover those costs. United National further argues that SST accepted the terms of its reservation of rights letter when it accepted defense costs without objecting to the reservation of rights, thereby giving rise to an implied contract for reimbursement. There being no Ohio decisions on this issue, United National urges us to look at opinions from other jurisdictions allowing insurers to reserve a right to recoupment and Ohio cases on implied contracts.

SST contends that, because it never expressly accepted the reservation of rights, the reservation is ineffective. SST argues, "An insurer's offer to defend is made primarily for its own benefit, and the insured should not be forced to reimburse costs that the insurer expends for its own benefit." Appellee's Final Br. at 4.

The district court did not address this argument because it decided United National's § 2202 motion solely on the basis that United National was a "volunteer" when it defended the underlying patent suit.

Because the Ohio Supreme Court has not determined the issue before us, we

> must ascertain from all available data, including the decisional law of the state's lower courts, restatements of law, law review commentaries, and decisions from other jurisdictions on the "majority" rule, what the state's highest court would decide if faced with the issue.

*Grantham & Mann, Inc. v. American Safety Prods., Inc.*, 831 F.2d 596, 608 (6th Cir. 1987) (citations omitted).

reservation of rights letter formed a new contract. The majority opinion embraces United National's unpersuasive argument that an entirely new contract was entered into based upon nothing more than the reservation of rights letter unilaterally generated by United National. Specifically, United National contends that the letter constituted an implied-in-fact agreement, separate and apart from the underlying contract. However, settled law and clear policy considerations warrant that this argument be rejected.

"A contract may either be express or implied-in-fact." *Campanella v. Commerce Exch. Bank*, 745 N.E.2d 1087, 1095 (Ohio Ct. App. 2000) (citation omitted). The difference between the two is the form of proof used to show their existence. Express contracts are proved by way of "express written and oral statements" manifesting offer and acceptance of an agreement, and a meeting of the minds between or among the parties. *Id*. On the other hand, "[a] contract implied in fact may be proved by showing that the circumstances surrounding the parties' transactions make it reasonably certain that an agreement was intended." *See Lucas v. Costantini*, 469 N.E.2d 927, 929 (Ohio 1983) (citation omitted); *see also Campanella*, 745 N.E.2d at 1095 ("In implied-in-fact contracts, the parties' meeting of the minds is shown by the surrounding circumstances including the parties' conduct and declarations, making it reasonably inferable that the parties intended to create binding and certain obligations.").

United National contends, and the majority opinion agrees, that the circumstances surrounding the unilateral reservation-of-rights letter demonstrate that the parties intended to enter into a binding agreement. Specifically, United National contends that after it sent the reservation of rights letter to SST, the latter did not object to the terms explicated in the letter and accepted United National's payment of the defense costs. United National therefore attempts to use SST's silence to bind it. However, "in the usual situation an offeror cannot cause the silence of the offeree to constitute an

United National contends, however, that this novel right derives from its unilateral reservation of rights letter.[1] Despite the majority's characterization that courts universally allow recoupment of defense costs in response to reservation of rights letters under circumstances similar to those present in the instant case, in actuality "[t]here is a difference of opinion as to whether an insurer may reserve the right to reimbursement of defense costs [with a unilateral reservation of rights letter]. Under one view, an insurer has no right to payment for such costs under a policy, and the creation of such a right [by way of a unilateral reservation of rights letter] . . . amount[s] to a pro tanto supersession of the policy without separate agreement and separate consideration." 14 George J. Couch on Insurance § 202:40, at 202-98-99 (3d ed. 1999) (footnote and citations omitted).

Further, one of the most recent cases discussing this issue has expressly held that "a unilateral reservation of rights letter cannot create rights not contained in the insurance policy." *Texas Ass'n of Counties County Gov't Risk Mgmt. Pool v. Matagorda County*, 52 S.W.3d 128, 131 (Tex. 2000) (citing *Shoshone First Bank v. Pac. Employers Ins. Co.*, 2 P.3d 510, 515-16 (Wyo. 2000) (rejecting the notion that the insurer could base a right to recover defense costs on a letter and stating "we will not permit the contract to be amended or altered by a reservation of rights letter")). As SST points out, it never assented to any attempt on United National's part to amend its insurance policy, which, as explained above, did not grant United National the right of recoupment it seeks to exercise.

United National contends, however, that it does not seek to amend the insurance contract, but rather that the unilateral

---

[1] The reservation of rights letter stated in pertinent part: "United National reserves the right to recoup from SST Fitness any defense costs and fees to be paid subject to this reservation letter on the basis that no duty to defend now exists or has existed with regard to the tendered [patent] suit." (J.A. at 114-15.)

In accordance with this directive, we examine decisions and rationales from other jurisdictions that have decided this specific issue, general Ohio law, and policy considerations for guidance in determining how the Ohio Supreme Court would likely decide this issue.

### A. Decisions from Other Jurisdictions

United National contends this court should, and the Ohio Supreme Court would, follow decisions from other jurisdictions that allow an insurer to recover defense costs when the insurer had no duty to defend.

In *Colony Insurance Co. v. G & E Tires & Service, Inc.*, 777 So. 2d 1034 (Fla. Ct. App. 2000), the court decided whether an insurer could be reimbursed for defense costs when the insurer did not have a duty to defend. After reviewing cases from other jurisdictions, the court determined that the insurer was entitled to reimbursement of those costs. *Id.* at 1039. The court stated, "Having accepted Colony's offer of a defense with a reservation of the right to seek reimbursement, G & E ought in fairness make Colony whole, now that it has been judicially determined that no duty to defend ever existed." *Id.* The court also looked to basic contract law and stated, "A party cannot accept tendered performance while unilaterally altering the material terms on which it is offered." *Id.* (citing RESTATEMENT (SECOND) OF CONTRACTS § 69 (1981)). The court found that, when the insured accepted its defense, it also accepted the terms of the offer, including a potential for reimbursement. *Id.*

In *Grinnell Mutual Reinsurance Co. v. Shierk*, 996 F. Supp. 836 (S.D. Ill. 1998), the court looked to other jurisdictions for guidance in deciding whether an insurer was entitled to reimbursement for defense costs. The court stated that to be entitled to reimbursement, an insurer must: 1) specifically reserve the right to seek reimbursement from its insured; and 2) provide the insured with adequate notice of this potential reimbursement. *Id.* at 839. The court held:

Shierk accepted the benefit of Grinnell's defense. Further, Shierk was fully apprised that Grinnell reserved its right to seek reimbursement in the event that it was later determined that it had no duty to defend him. As a result, although it appears that the Illinois courts have not yet had an opportunity to address the precise issue of reimbursement, the Court predicts that if the Illinois Supreme Court were faced with this precise issue, it would authorize the relief sought by Grinnell and order reimbursement of the costs of defense.

*Id.* (citations omitted).

In *Resure, Inc. v. Chemical Distributors, Inc.*, 927 F. Supp. 190 (M.D. La. 1996), the insurer sought reimbursement of defense costs following a reservation of its right to reimbursement. The court determined that the insured was entitled to reimbursement, stating:

Resure timely reserved its rights under the policy. That reservation specifically referred to the possibility that Resure might seek reimbursement for any and all costs of defense. There is nothing in the record to suggest CDI objected to the reservation. Accordingly, Resure is entitled to reimbursement for all costs of defense.

*Id.* at 194.

In *Knapp v. Commonwealth Land Title Insurance Co.*, 932 F. Supp. 1169 (D. Minn. 1996), the insurer, in a reservation of rights letter, stated it would pay defense costs in a land title dispute and reserved the right to seek attorneys' fees and costs later. The court found that an insurer had a right to recover defense costs. *Id.* at 1172 ("[W]here an insurer has properly met its duty and subsequently successfully challenges policy coverage, it should be entitled to the full benefit of such a challenge and be reimbursed for the benefits it bestowed, in good faith, to its insured."). The court stated that an insurer must clearly indicate a reservation of its right to seek reimbursement. *Id.* The court concluded, "Under these

insured sued claiming that the insurer was precluded from withdrawing a defense under the doctrines of waiver and estoppel. *Id.* The intermediate appeals court stated that the general rule is that waiver and estoppel cannot create coverage under a contract where none existed. *Id.* Thus, inasmuch as the insurance contract never covered the claims brought against the insured in the first place, these equitable doctrines could not be used to expand coverage where none existed. *Id.* However, the court recognized that there exists an exception to this general rule. That is, where an insurer, without reserving its rights under the policy, provides a defense for such a period as to prejudice the insured if the defense is withdrawn, or where the insurer or its agent misrepresents the extent of the coverage the insured has purchased, then the insurer may be estopped from denying coverage. *Id.* at 179.

In the instant case, United National contends that its reservation of rights letter allowed it to do much more than to withdraw from defending SST Fitness Corporation ("SST") or to deny coverage in the patent action asserted against SST once the district court, and later this Court, determined that such claims were not covered under the policy. United National also claims that it has the right to be reimbursed for the funds it expended defending SST in the patent action. However, United National admits that the underlying insurance contract that United National entered into with SST contains no provision allowing it to recoup attorney fees where United National elects to accept the tender of a defense and then later discovers that it had no duty to do so. Thus, the right United National seeks to assert in this case, the right to reimbursement under the applicable policy of insurance, is not a right to which it is entitled based on noncoverage under the policy. *Motorists Mut.*, 294 N.E.2d at 877.

the allegations state a claim which may arguably or potentially fall within policy coverage, the insurer must, as a rule, accept the defense.")

If an insurer refuses to defend the insured, and a court later determines that the claims asserted against the insured were in fact covered under the insurance contract, the insured may sue the insurer for breach of contract. *See Centennial Ins. Co. v. Liberty Mut. Ins. Co.*, 404 N.E.2d 759, 761 (Ohio 1980) ("It is settled law in this state that an insurer owes a duty to exercise good faith in *defending and settling claims* against the insured and that a breach of that duty will give rise to a cause of action by the insured.") (emphasis added). In the instant case, United National Insurance Company ("United National") apparently had some concerns about whether coverage existed under the insurance contract inasmuch as it agreed "in the abundance of caution" to defend SST in the underlying patent action asserted against SST by a third party. (J.A. at 114.)

Where there is doubt about whether the policy covers claims asserted against an insured, it is in the insurer's interest to mount a defense for the insured, subject to a reservation of rights. *City of Willoughby Hills,* 459 N.E.2d at 559 n.1; *see also Motorists Mut. Ins. Co. v. Trainor,* 294 N.E.2d 874, 877 (Ohio 1973) (explaining that a "unilateral reservation of rights is notice given by the insurer that it will defend the suit, *but reserves all rights it has based on noncoverage under the policy*") (emphasis added). Otherwise, although a court might later determine that the underlying insurance contract does not cover a particular claim, where the insurer undertakes the defense without reserving its rights to deny either coverage or a duty to defend, the insured may be estopped from later doing so. *Turner Liquidating Co. v. St. Paul Surplus Lines Ins. Co.*, 638 N.E.2d 174, 178 (Ohio Ct. App. 1994). In *Turner*, for instance, an insurer defended an insured in an action and then a couple of months later informed the insured that it would soon stop providing a defense. *Id.* at 175. The insurer did not reserve its rights to withdraw the defense. The

circumstances, the Court finds it appropriate to determine that Knapp's silence in response to Commonwealth's reservations of rights letter, and subsequent acceptance of the defense provided by Commonwealth, constitutes an implied agreement to the reservation of rights." *Id.*

In *First Federal Savings & Loan Association of Fargo, North Dakota v. Transamerica Title Insurance Co.*, 793 F. Supp. 265, 269 (D. Colo. 1992) (citations omitted), the court stated, "An insurance company may also reserve its right to deny its duty to defend and later recover for any attorney fees paid." The court determined that because the insured did not object to the insurer's reservation of rights, the insurer was entitled to reimbursement. *Id.*

A few cases, however, have not allowed recoupment of defense costs. *See Terra Nova Ins. Co. v. 900 Bar Inc.*, 887 F.2d 1213 (3d Cir. 1989); *In re Hansel*, 160 B.R. 66 (Bankr. S.D. Tex. 1993); *Shoshone First Bank v. Pacific Employers Ins. Co.*, 2 P.3d 510 (Wyo. 2000). These cases, however, reject demands for recoupment on the basis of defects in the reservation of rights, rather than on the basis that recoupment depends on an express agreement by the insured.

In *Terra Nova*, 887 F.2d at 1217 and 1219, for example, the insurer appointed counsel for its insured subject to a general reservation of rights letter. The court found the insurer was not entitled to reimbursement for defense costs because of the general nature of the reservation of rights. *Id.* In *Hansel*, 160 B.R. at 70, the court stated,

> Nowhere does either letter mention that Republic expects the insureds to reimburse it for the costs of defense of the state tort suit should it be found to have no duty to defend the insureds. . . . Even assuming Republic could have created this right through a subsequent agreement with the insureds, these letters fail to put the reader on notice that such a right is claimed.

The court found that, because the insurer did not provide timely notice of the reservation, the insurer was not entitled to reimbursement. *Id.* In *Shoshone First Bank*, 2 P.3d at 511, the court stated, "we hold that the allocation and recovery of the costs attributable to the defense of claims that were not covered by the policy of insurance is not permitted under Wyoming law so long as one or more of the claims alleged is covered by the insurance policy."

Courts in other jurisdictions thus consistently have held that an insurer is entitled to reimbursement for defense costs when the insurer did not have a duty to defend any of the asserted claims where the insurer: 1) timely and explicitly reserves its right to recoup the costs; and 2) provides specific and adequate notice of the possibility of reimbursement. The general rule thus appears to be that, if these conditions are met, a reservation of rights is enforceable even absent an express agreement by the insured.

### B. Ohio Contract Law

United National argues that SST's acceptance of defense costs, with United National's reservation of rights, created an implied contract agreeing to the reservation.

In Ohio, "it is well-established that there are three classes of simple contracts: express, implied in fact, and implied in law." *Legros v. Tarr*, 44 Ohio St. 3d 1, 6 (1989) (citing *Hummel v. Hummel*, 133 Ohio St. 520, 525 (1938); *Rice v. Wheeling Dollar Sav. & Trust Co.*, 155 Ohio St. 391 (1951)). An express contract occurs when the parties' assent to a contract's terms is expressed through an offer and acceptance. *Id.* (quoting *Hummel*, 133 Ohio St. at 525). A contract implied in fact occurs when a meeting of the minds is demonstrated by surrounding circumstances, allowing a factfinder to infer the existence of a contract by tacit understanding. *Id.* (quoting *Hummel*, 133 Ohio St. at 525); *see also Lucas v. Costantini*, 13 Ohio App. 3d 367, 369 (1983) ("A contract implied in fact may be proved by showing that

———————

### DISSENT

———————

CLAY, Circuit Judge, dissenting. Despite the lack of any controlling precedent from the Ohio courts on this matter, the majority opinion essentially holds that an insurer can unilaterally alter the terms of an existing contract and force an insured to reimburse the insurer for attorney fees and costs by way of a unilateral reservation of rights letter. Because the law and public policy considerations strongly militate against reaching such a holding, I respectfully dissent.

This case requires that we determine whether an insurer that decides in good faith to defend an insured against claims, which the insurer is uncertain are covered under the insurance policy, may unilaterally alter the terms of the insurance policy to recoup defense costs when a court later makes an after-the-fact determination that the policy did not cover the claims against the insured. As explained below, the answer to this question unequivocally is that an insurer should not be allowed to do so.

In Ohio, an insurer has a duty to defend an insured whenever a complaint filed against the insured contains allegations that are expressly covered by the policy or are even arguably or potentially covered. *City of Willoughby Hills v. Cincinnati Ins. Co.*, 459 N.E.2d 555, 558 (Ohio 1984). Where the allegations in the complaint in the underlying suit against the insured "are vague, ambiguous, or incomplete, so that the 'potential for coverage' exists, a duty to defend by the insurer exists." *Monsler v. Cincinnati Cas. Co.*, 598 N.E.2d 1203, 1206 (Ohio Ct. App. 1991) (citation omitted); *see also Grange Mut. Cas. Co. v. Rosko*, 767 N.E.2d 1225, 1230-31(Ohio Ct. App. 2001) ("Even where the duty to defend is unclear from the complaint brought against the insured or where there exists some doubt about whether the theory of recovery falls within the scope of the policy, if

where none would otherwise exist."). This policy would not be promoted by holding United National as a volunteer, however, because United National did not force defense costs on SST—SST requested the defense costs. Having received what it wanted, SST properly can be required to pay for what it thereby gained.

The district court therefore erred in finding United National qualified as a volunteer because SST requested United National's payment, United National asserted a claim in contract and not in equity, and United National reserved its right to recoupment.

## CONCLUSION

For the foregoing reasons, we **REVERSE** the judgment of the district court and **REMAND** for further proceedings in accordance with this decision.

the circumstances surrounding the parties' transactions make it reasonably certain that an agreement was intended.") (citing *Columbus, Hocking Valley & Toledo Ry. Co. v. Gaffney*, 65 Ohio St. 104 (1901)). A contract implied in law occurs when there is no meeting of the minds, and the law creates an obligation on a person who received a benefit and would be unjustly enriched by the benefit. *Id.* (quoting *Hummel*, 133 Ohio St. at 525).

United National does not contend that this case involves a contract implied at law or an express contract. United National argues, rather, the parties had a contract implied in fact. (Appellant's Final Reply Br. at 2 n.1) ("Because United National seeks recoupment only under an implied-in-fact contract, SST's footnote 3 claiming that 'United National's attempt to obtain equitable relief must be rejected . . .' is irrelevant.") (alteration in original).

Implied in fact contracts usually occur when a party provides another party with services or materials under circumstances where a payment typically is made for the services or materials. *Lucas*, 13 Ohio App. 3d at 369 ("The law is said to 'imply' an obligation on the part of a person who benefits from the services or materials received to pay for the services or materials.") (citing *Ashley v. Henahan*, 56 Ohio St. 559, 574 (1897)); *Evans v. Rizzo*, No. 9-96-26, 1996 Ohio App. LEXIS 3648, at *6, 1996 WL 479565, at *2 (Aug. 20, 1996) ("To prove the existence of an implied contract, services must be rendered, work performed, or materials furnished by one party to another under such circumstances that the receiving party knew, or should have known, that such services were rendered with the expectation of being paid on the basis of their reasonable worth.") (citing *Terex Corp. v. Grim Welding Co.*, 58 Ohio App. 3d 80, 82 (1989)).

To establish the existence of an implied in fact contract, "the plaintiff must prove that the defendant either requested or assented to such conduct under conditions precluding an inference that the plaintiff acted gratuitously." *Id.* (citing

*Gaffney*, 65 Ohio St. 104); *Stepp v. Freeman*, 119 Ohio App. 3d 68, 74 (1997) ("To establish a contract implied in fact a plaintiff must demonstrate that the circumstances surrounding the parties' transaction make it reasonably certain that an agreement was intended.") (citation omitted).

Because United National contends the parties entered into an implied in fact contract, United National must prove that SST accepted the defense costs with the reservation of rights under conditions disallowing an inference that United National acted gratuitously. *Lucas*, 13 Ohio App. 3d at 369 (citing *Gaffney*, 65 Ohio St. 104) ("[T]he plaintiff must prove that the defendant either requested or assented to such conduct under conditions precluding an inference that the plaintiff acted gratuitously."). Stated differently, United National must show that the circumstances surrounding the transaction make it reasonably certain that the parties intended to agree that United National would recoup defense costs if United National had no duty to pay the costs. *Stepp*, 119 Ohio App. 3d at 74.

United National has met this burden. The evidence demonstrates that SST knew of United National's reservation of rights because it received a letter stating, "United National reserves the right to recoup from SST any defense costs and fees to be paid subject to this reservation letter on the basis that no duty to defend now exists or has existed with regard to the tendered suit." J.A. at 115. SST did not object to the reservation and accepted United National's payment of defense costs. *See, e.g., Knapp*, 932 F. Supp. at 1172 ("Under these circumstances, the Court finds it appropriate to determine that Knapp's silence in response to Commonwealth's reservations of rights letter, and subsequent acceptance of the defense provided by Commonwealth, constitutes an implied agreement to the reservation of rights."). The reservation of rights letter shows that United National did not act gratuitously.

complaint for contribution against defendants-appellees, Safeco Insurance Company ('Safeco'), Statesman Insurance Company and State Automobile Insurance Company (jointly 'Statesman'), for costs incurred in settling two cases filed against an insured."); *Fireman's Fund*, 95 Ohio App. at 88 ("This is an action by one insurance company to compel another insurance company to contribute a share of a sum of money paid by one in proportion to the ratio their policies bear to one another.").

United National, furthermore, reserved its right to reimbursement, unlike the plaintiffs in the cases cited by SST. *See, e.g., Farm Bureau*, 147 Ohio St. at 89–90; *Insurance Co. of N. Am.*, 118 Ohio App. 3d at 314; *Amerisure*, 77 Ohio App. 3d at 241; *Fireman's Fund*, 95 Ohio App. at 91. At least one court has given controlling weight to the insurer's failure to reserve its right. In *Insurance Co. of North America*, 118 Ohio App. 3d at 314 (emphasis added), the court stated, "At the point at which [plaintiff] assumed the defense, it did so as a volunteer (*having failed to reserve its rights*), not as a result of [defendant's] wrongful refusal to defend." Implicit in this language is the court's recognition that, if the plaintiff had reserved its rights, the plaintiff would not have been a volunteer. In this case, United National could not be a volunteer because it specifically reserved its right to recoupment.

One of the policy issues underlying the volunteer doctrine would, moreover, not be furthered by finding United National was a volunteer. The volunteer defense prevents sellers with no market for their goods from forcing those goods on unsuspecting customers and then seeking restitution, thereby creating a right of payment where one did not otherwise exist. *See* Robert H. Jerry, II, *The Insurer's Right to Reimbursement of Defense Costs*, 42 ARIZ. L. REV. 13, 56–57 (2000) ("The principal rationale for denying restitution in these circumstances devolves from the concern that a party might foist benefits upon unsuspecting people, using the law of restitution to create a right to payment for goods or services

from United National by tendering the underlying litigation to United National for defense in December, 1996. *See* J.A. at 114. United National cannot be a volunteer because SST asked United National to pay the defense costs.

SST relies on several cases for the proposition that United National was a volunteer and therefore not entitled to reimbursement: *Farm Bureau*, 147 Ohio St. 79; *Insurance Co. of N. Am. v. Travelers Ins. Co.*, 118 Ohio App. 3d 302 (1997); *Amerisure Cos. v. Statesman Ins. Co.*, 77 Ohio App. 3d 239 (1991); *Fireman's Fund Indem. Co. v. Mutual Cas. Co.*, 95 Ohio App. 88 (1953). These cases are not, however, authority because they easily are distinguished from this case.

SST correctly states the rule espoused in these cases that "equity will not aid a volunteer." *Farm Bureau*, 147 Ohio St. at 88 (citations omitted); *Insurance Co. of N. Am.*, 118 Ohio App. 3d at 317 (citation omitted); *Amerisure*, 77 Ohio App. 3d at 241 (citation omitted); *Fireman's Fund*, 95 Ohio App. at 91 (citation omitted). United National however seeks reimbursement under contract, not contribution pursuant to principles of equity. United National's main argument is that the parties entered into an implied in fact contract and United National is, therefore, entitled to reimbursement pursuant to that contract. Unlike the plaintiffs in SST's cited cases, United National does not seek to recover as a matter of equity and contribution. *See, e.g.*, *Farm Bureau*, 147 Ohio St. at 86 ("[T]he contention of the plaintiff [was] that in equity and good conscience the defendant should be compelled to pay its proportionate share of the money paid by the plaintiff in full settlement of the claims arising out of the collision."); *Insurance Co. of N. Am.*, 118 Ohio App. 3d at 314–15 ("[T]he secondary insurer possesses an equitable right to recover from the primary insurer, as well as a right to recover by way of subrogation under the policy. . . . INA contends that it was a secondary insurer to Travelers, the primary insurer, and therefore entitled to recover from Travelers.") (citation omitted); *Amerisure*, 77 Ohio App. 3d at 240 ("Plaintiff-appellant, Amerisure Companies ('Amerisure'), filed a

SST argues that the parties did not create an implied in fact contract because: 1) United National did not provide consideration to modify the original insurance contract with the reservation of rights; 2) United National could not unilaterally modify the original insurance contract; and 3) SST never accepted the reservation of rights because silence and inaction do not constitute acceptance. United National did not, however, modify the original insurance contract; instead, the parties entered into a new agreement in which United National offered defense costs subject to potential reimbursement and SST accepted that offer by accepting the defense costs.

United National's conduct also entitles United National to reimbursement under the persuasive decisions addressing this specific issue in other jurisdictions. Under that line of cases, as previously discussed, United National is entitled to reimbursement if United National: 1) timely and explicitly reserved its right to recoup the costs; and 2) provided specific and adequate notice of the possibility of reimbursement.

United National timely and explicitly reserved its right to recoup defense costs because United National notified SST of the reservation, in a letter dated January 21, 1997, prior to payment of the defense costs. The letter explicitly stated that United National reserved its right to recoup defense costs if a court determined that United National had no duty to provide such costs. J.A. at 115 ("United National reserves the right to recoup . . . any defense costs . . . ."). United National also provided specific and adequate notice of the possibility of reimbursement in this letter.

As further support for its claim for reimbursement, United National contends that allowing an insurer to recoup costs when it did not have a duty to defend ensures that defenses will be afforded even in questionable cases. United National argues that "reservation-of-rights letters promote economic use of scarce judicial resources by increasing insurers' willingness to defend in cases of questionable coverage."

Appellant's Final Br. at 17. United National cites *Knapp*, which stated, "The courts should be consistent in encouraging insurance companies to properly meet their duty to defend its insured against third party claims and minimize unnecessary claims to enforce policy coverage." *Knapp*, 932 F. Supp. at 1172.

SST, echoing the district court, contends that an insurer benefits from defense under a reservation of rights because the insurer avoids a claim for bad faith. Appellee's Final Br. at 12 ("United National 'avoided any allegation of bad faith' and avoided responsibility to pay damages if it were later determined that United National had an obligation to defend the underlying action.") (citing J.A. at 186). SST further contends that United National had the benefit of controlling the underlying litigation. SST quotes from *Shoshone* and argues reimbursement would force insureds to make a difficult decision:

> "However, to allow the insurer to force the insured into choosing between seeking a defense under the policy, and run the potential risk of having to pay for this defense if it is subsequently determined that no duty to defend existed, or giving up all meritorious claims that a duty to defend exists, places the insured in the position of making a Hobson's choice."

2 P.3d at 516 (citation omitted).

We agree that allowing an insurer to recover under an implied in fact contract theory so long as the insurer timely and explicitly reserved its right to recoup the costs and provided specific and adequate notice of the possibility of reimbursement promotes the policy of ensuring defenses are afforded even in questionable cases. When an insurer conditions payment of defense costs on the condition of reimbursement if the insurer had no duty to defend, the condition becomes part of an implied in fact contract when the insured accepts payment. When faced with a reservation

of rights, the insured can choose to: 1) decline the offer, pay for the defense, and seek to recover on the policy; 2) decline the offer and file a declaratory judgment action; or 3) accept the offer subject to the reservation of rights.

Because SST entered into an implied in fact contract by accepting the defense costs subject to a reservation of the right to recoupment if a court determined that United National had no duty to defend SST and a court found United National had no duty to defend, United National is entitled to reimbursement of its defense costs and prejudgment interest.

## II. Volunteer Status

Contrary to the foregoing, the district court determined that United National was a volunteer and could not recoup defense costs under Ohio law.

United National argues it was not a volunteer because it defended SST at SST's request and reserved its right to recoupment.

SST argues United National was a volunteer, and therefore not entitled to reimbursement, because United National made a payment of money with knowledge of the facts and without legal or contractual obligation.

A party is a volunteer if in making a payment, "he has no right or interest of his own to protect, and acts without obligation, moral or legal, and without being requested by anyone liable on the obligation." *Aetna Cas. & Sur. Co. v. Buckeye Union Cas. Co.*, 157 Ohio St. 385, 392–93 (1952) (citing 50 AM. JUR. § 22); *see also Farm Bureau Mut. Auto. Ins. Co. v. Buckeye Union Cas. Co.*, 147 Ohio St. 79, 88 (1946) ("one who, with knowledge of the facts and without legal liability, makes a payment of money, thereby becomes a volunteer") (citations omitted).

The volunteer defense applies if the paying party has not been asked for the payment. SST requested the defense costs