**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 07a0506n.06
Filed: July 18, 2007

**No. 06-4167**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| ALPHA TELECOMMUNICATIONS, INC., | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | **ON APPEAL FROM THE UNITED** |
| v. | ) | **STATES DISTRICT COURT FOR THE** |
| | ) | **NORTHERN DISTRICT OF OHIO** |
| INTERNATIONAL BUSINESS | ) | |
| MACHINES CORP., | ) | **OPINION** |
| | ) | |
| Defendant-Appellee. | ) | |
| | ) | |

BEFORE: MARTIN and DAUGHTREY, Circuit Judges; SCHWARZER,[*] District Judge.

WILLIAM W SCHWARZER, District Judge. Alpha Telecommunications, Inc. (Alpha) a dissolved Ohio corporation, sued International Business Machines Corp. (IBM) alleging breach of an express contract, breach of an implied contract, and fraud. The district court granted IBM's summary judgment motion on all three counts. It also granted IBM's motion to dismiss, finding that Alpha lacked standing. Alpha appeals the judgment. We affirm.

**I. BACKGROUND**

Alpha consulted for IBM, providing data which aided IBM's submissions of bids to school districts to provide computer equipment, hardware, software, and related services covered by the

---

[*]The Honorable William W Schwarzer, Senior United States District Judge for the Northern District of California, sitting by designation.

federal E-Rate program. In January 2003, the two companies negotiated concerning Alpha's services, including whether Alpha would provide data on the number of students in different districts eligible for federally subsidized meals. This information could assist IBM in the bidding process because the size of a school district's federal subsidy for electronics was pegged to the size of the subsidy the district received for school lunches.

On January 29, 2003, IBM sent an e-mail to Alpha asking for a dollar figure on the work concerning free and reduced lunches (FRL) and questioning who would be charged for the work on the FRL program. The alternatives included IBM "eat[ing] the cost" or the school districts being charged by Alpha or by Alpha through IBM. On January 29, 2003, Alpha set the price for FRL services at $75,000 per school district. On January 31, IBM acknowledged the $75,000 figure for FRL services and stated they will be "priced separately." It asked Alpha to "[p]lease confirm what I have below is correct." In an e-mail on February 2, IBM asked for Alpha's "concurrence" that the FRL program work will be "on Alpha" with Alpha pursuing the costs with the clients (the school districts) and charging for it separately. IBM sent another e-mail on February 3 asking for Alpha's concurrence on the fee structure of the FRL program. On February 3, Alpha sent an e-mail attached to IBM's January 31 e-mail stating, "Confirmed." Later that day, Alpha responded to IBM's February 3rd e-mail asking for concurrence, stating that it had already confirmed the fee structure.

Alpha completed work on forty-two districts on January 30, 2004. On November 24, 2004, before Alpha had invoiced IBM, the two principal owners of Alpha, Nathaniel Hawthorne and Paul Karas, settled a state court action, agreeing to dissolve Alpha. On March 9, 2005, an Ohio state judge ordered the dissolution of Alpha, incorporated by reference the settlement agreement, and appointed a receiver. On September 8, 2005, the receiver finished his work and the receivership was

terminated.

On April 18, 2006, Alpha faxed an invoice to IBM for $3.15 million for work on the FRL program. On May 1, 2006, IBM declined to pay Alpha. On May 4, 2006, Alpha filed a complaint claiming breach of an express contract, breach of an implied contract, and fraud. The district court issued an on June 13, 2006, directing Hawthorne to show cause why, considering Alpha had been dissolved in 2005, the case should not be dismissed. Hawthorne argued the case was filed for the purpose of winding up Alpha's corporate affairs. IBM then filed a motion to dismiss based on lack of standing, and the parties filed cross motions for summary judgment. On August 24, 2006, the district court granted IBM's motion to dismiss and its motion for summary judgment. This timely appeal followed.

## II. DISCUSSION

In its complaint, Alpha asserted three claims against IBM: (1) breach of an express contract, (2) breach of an implied contract, and (3) fraud. The validity of each claim turns on the exchange of e-mails between January 29 and February 3, 2003. "This Court reviews a grant of summary judgment de novo using the same legal standard employed by the district court . . . ." *Wojcik v. City of Romulus*, 257 F.3d 600, 608 (6th Cir. 2001). A district court properly grants summary judgment where "the pleadings . . . together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

## A. EXPRESS CONTRACT CLAIM

The district court held that no rational fact finder could find that the parties entered into an enforceable contract. It found that IBM's February 2 e-mail clearly expressed its intent that Alpha

would collect its charges from the school district and that the prior e-mails simply reflected the parties' negotiations.

"Essential elements of a contract include an offer, acceptance . . . , consideration, [and] a manifestation of mutual assent. A meeting of the minds as to the essential terms of the contract is a requirement to enforcing the contract." *Kostelnik v. Helper*, 770 N.E.2d 58 at ¶ 16 (Ohio 2002) (internal quotation marks and citations omitted). Here, there was no meeting of the minds. Alpha argues that its February 3 e-mail "confirmed" IBM's January 31 e-mail in which Alpha claims IBM said it would pay for the FRL services. IBM counters that its February 2 e-mail made clear it expected Alpha to collect from the individual school districts. The February 2 e-mail states, "the $75,000 Free & Reduced Lunch piece being on Alpha and you guys pursuing that with clients." Thus, even if Alpha's acceptance only applied to the January 31 e-mail, IBM's understanding of the acceptance was based on the February 2 clarification, and there was no meeting of the minds and no enforceable contract.

In its briefs, Alpha essentially ignores the terms of the February 2 e-mail, arguing that IBM did not permit Alpha to contact its clients and that it had been told previously to contact the districts only with IBM's prior approval. As a result, Alpha argues, it could never have approached the districts to collect fees because that would violate IBM's policy. Even if true, however, it does not follow that the agreement must have been for IBM to pay Alpha. As the February 2 email makes it clear that IBM believed Alpha could seek the payment from the school districts, Alpha's argument merely reinforces the conclusion that there was no meeting of the minds on an essential term.

If, as Alpha argues, IBM's January 31 e-mail constituted a valid offer, there was no acceptance prior to IBM's February 2 e-mail which stipulated that Alpha would be responsible for

4

collecting from the school districts. Thus, even if these e-mails created a contract, that contract provided that Alpha had to collect from the districts, and Alpha's claim still fails.

## B.     IMPLIED CONTRACT CLAIM

The district court did not rule on this claim. Alpha's brief does not make clear whether its implied contract claim is based on an implied in law contract or an implied in fact contract. The heading of the relevant section and the first case cite refer to implied in law contracts, but the text and a later case citation refer to implied in fact contracts. At oral argument, Alpha stated that it was alleging an implied in fact contract. In either case, Alpha's claim fails.

An implied in fact contract requires proof of a meeting of the minds. *See United Nat'l Ins. Co. v. SST Fitness Corp.*, 309 F.3d 914, 919 (6th Cir. 2002) (applying Ohio law) ("A contract implied in fact occurs when a meeting of the minds is demonstrated by surrounding circumstances, allowing a factfinder to infer the existence of a contract by tacit understanding."). As discussed above, there was no meeting of the minds; further, any implied in fact contract would have included a requirement that Alpha seek payment from the school districts, precluding Alpha's claim against IBM.

If Alpha is claiming that an implied in law contract was formed, a similar result follows. "A contract implied in law occurs when there is no meeting of the minds, and the law creates an obligation on a person who received a benefit and would be unjustly enriched by the benefit." *United Nat'l Ins. Co.*, 309 F.3d at 919. IBM and Alpha filed affidavits demonstrating a factual disagreement on whether IBM actually knew the work had been done and had received its benefit. This dispute, however, is immaterial. Even if IBM was enriched, it was enriched while Alpha knew that IBM believed Alpha would seek payment from the school districts, and the enrichment therefore

5

would not be unjust.  Thus, neither an implied in fact nor an implied in law contract was formed.

## III.  FRAUD CLAIM

To prove fraud, Alpha must show:

(a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance.

*Gaines v. Preterm-Cleveland, Inc.*, 514 N.E.2d 709, 712 (Ohio 1987).  Alpha has failed to come forward with facts showing an intentional misrepresentation or concealment by IBM.  Because Alpha has failed to show a genuine issue of material fact, summary judgment was properly granted on the fraud claim.

## IV.  CONCLUSION

Because the district court correctly granted IBM's motion for summary judgment on the merits, we need not address Alpha's standing.  For the reasons stated, the judgment of the district court is

## AFFIRMED.