**TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA,**
Plaintiff

v.

**HILLERICH & BRADSBY COMPANY, INC.,**
Defendant.

Civil. Action No. 3:05CV–533–H.

United States District Court,
W.D. Kentucky,
at Louisville.

Dec. 18, 2008.

James R. Lilly, Plunkett & Cooney, P.C., Bloomfield Hills, MI, Armer H. Mahan, Jr., Joseph P. Hummel, Lynch, Cox, Gilman & Mahan, P.S.C., Louisville, KY, for Plaintiff.

Merrill S. Schell, Wyatt, Tarrant & Combs LLP, Steven H. Lyverse, Louisville, KY, for Defendant.

## MEMORANDUM OPINION

JOHN G. HEYBURN II, District Judge.

Plaintiff, Travelers Property Casualty Company of America ("Travelers"), has moved for entry of a final judgment concerning two issues: (1) its payment of attorney's fees to Defendant, Hillerich & Bradsby Co., Inc. ("H & B"), and (2) reimbursement of $500,000 it paid on H & B's behalf to settle the underlying Baum litigation. H & B has opposed this motion and has also asked the Court to reconsider its previous determination that Travelers was entitled to seek reimbursement of the settlement amounts based upon its reservation of rights.

The question of whether Travelers may condition its advance of settlement payments upon a reservation of rights is one upon which judges have disagreed. However, for the reasons stated here and its prior opinion, this Court is confident the Kentucky courts would permit a reservation of rights at least under the reasonable circumstances outlined here.

## I.

The Court has already set forth some of the relevant facts and considered a number of important issues in this case. For context, the Court reviews the material facts and important rulings once again.

### A.

The important facts begin on July 1, 1998, when Baum Research and Development Company ("Baum") filed suit in the Eastern District of Michigan against H & B and several other defendants alleging wide-ranging antitrust violations. The thrust of the allegations were that H & B, Easton Sports, Inc. and Worth, Inc. conspired to maintain their supremacy in the aluminum baseball bat market. Initially, Travelers denied coverage and refused to provide H & B with a defense. H & B hired its own attorneys.

In January, 2000, however, Baum filed a Second Amended and Supplemental Complaint, adding potential disparagement claims, which caused Travelers to reevaluate its position and to offer a defense under a reservation of rights. H & B accepted the offer of defense, retained its existing attorneys who were henceforth compensated by Travelers. H & B remained in full control of the litigation. As evidence by the fact that after some five years of litigation later, Travelers had paid about $2,800,000 in attorney's fees for H & B.

In January 2005, settlement negotiations commenced as the trial proceeded. As the settlement talks intensified the parties exchanged e-mails concerning Travelers' willingness to pay a settlement under a

reservation of rights. During an argument concerning a defendant's motion for directed verdict, Judge Cohn made statements suggesting that Baum had not proven the disparagement allegations of its antitrust claim. This meant that Plaintiff appeared to have failed to prove the one aspect of its claim for which Travelers' coverage might be applicable.

Prior to the case going to the jury, H & B had an opportunity to settle its liability for a $500,000, share or risk being the only remaining defendant as the case headed to the jury. H & B's counsel urged, and approved, the settlement and H & B demanded that Travelers pay its portion of the proposal. In the end, Travelers agreed to pay H & B's portion of the negotiated settlement and conditioned the settlement with its reservation of rights, which H & B declined to accept.

## B.

This lawsuit followed shortly thereafter. Since its filing the Court has issued a succession of significant rulings leading to this point.

On August 28, 2006, 2006 WL 2524145, this Court concluded that under Kentucky law, Travelers would be entitled to seek reimbursement for settlement payments where (1) it timely asserted a reservation of rights, (2) it notified the insured of its intent to seek to reimbursement, (3) H & B had meaningful control of the defense in the negotiation process, and (4) the Court determines that the insurance policy did not cover the Baum litigation claims. This seemed to be the approach most favored by other jurisdictions. The most significant of the Court's conclusions was that once Travelers expressly reserved its rights under the appropriate conditions, its right to reimbursement did not depend upon H & B agreeing to the reservation.

The Court found the first three conditions to be met.

Next, in a Memorandum Opinion dated April 23, 2007, 2007 WL 1231560, the Court considered the last element, whether any of the $500,000 payment could be construed as a payment for a covered claim of disparagement. It is important to remember that the Travelers' Commercial General Liability Policy at issue did not provide coverage for anti-trust liability generally. The policy did provide coverage where H & B has liability for disparaging another's product. The Baum complaint contained no separate cause of action for libel, slander or disparagement. The factual allegations of disparagement partially occupied only two paragraphs out of ninety-seven in the Second Amended Complaint.

The Court then considered whether Baum could have proved disparagement as part of its anti-trust case. Based upon Judge Cohn's comments during the motions for directed verdict, the Court concluded that during trial Plaintiff had not submitted sufficient evidence to sustain the claim of disparagement against H & B. Consequently, the settlement did not involve payment for any covered claim. However, other non-covered aspects of the tortious interference claim remained. The Court also concluded that Travelers' duty to defend the claims commenced with the filing of the First Amended Complaint on November 8, 1999.

In an opinion dated July 3, 2007, 2007 WL 1999988, the Court reviewed its decision regarding Travelers' obligation to defend and concluded that the original decision was correct.

## II.

H & B has asked the Court to reconsider its previous ruling that Travelers was entitled to seek reimbursement for settle-

ment payments made under a reservation of rights. It does so based upon a new case in which a five-three majority of the Texas Supreme Court concluded that (1) silence in the face of a reservation of rights does not create an implied in fact reimbursement obligation, (2) insurers are in a better position either to manage the risks of non-reimbursement or to draft stronger policy language to assure its validity, and that (3) the insured should not be placed in the difficult position of rejecting a settlement within policy limits or accepting a financial obligation for which it thought itself insured.[1] *Excess Underwriters at Lloyd's, London v. Frank's Casing Crew & Rental Tools, Inc.*, 246 S.W.3d 42 (Tex.2008). Therefore, an excess insurance carrier has no right to a reimbursement of settlement payments unless the insured expressly agrees to the reservations of rights either in the policy itself or at the time of the settlement.[2]

The Texas Supreme Court resolved *Frank's Casing* by determining that the insurer was in the best position to assume the risk of coverage uncertainties. *Id.* at 46, 47–48. In so holding, it stated that the insurer could account for risk using contract language or in the rate structure. *Id.* at 48. The court refused to find an implied-in-fact agreement to provide contract terms. *Id.* at 48–49. Ultimately, it disagreed that upon accepting the insurer's conditioned agreement to pay the settlement amount, the insured accepts those conditions. *Id.* at 48. It believed that neither party changed their position in such a scenario and therefore no basis for finding such an agreement existed. *Id.* In particular, it stated that there could not have been a meeting of the minds between the insured and the insurer because the insured had no role in the settlement negotiations. *Id.* at 49.

The Court does not find the *Frank's Casing* opinion to be particularly convincing, irrespective of the number of parties filing *amicus* briefs or its predicted broad impact. Its brief analysis leans heavily on the supposed dynamics of settlement negotiations and the conflicts of interest that arise during such settlement negotiations. Its underlying concern is that any settling insurer must be made to retain the incentive of negotiating a lower figure because doing so lessens its own exposure. The majority opinion suggests that the incentive is lost if the insurer believes that ultimately it will not be required to pay. Where, as here, everyone agreed that the settlement was reasonable, the question of incentives to settle is immaterial. This is simply not a cogent rationale.

Balanced against *Frank's Casing* is an opinion of the Sixth Circuit interpreting Ohio law where a general liability insurer sought reimbursement of its defense costs based upon a reservation of rights. *United National Insurance Company v. SST Fitness Corporation*, 309 F.3d 914 (6th

---

1. The dissenters responded vigorously and at length about the injustice and illogic of the majority opinion. They argue that the majority's decision enriches the insurer by an amount "for which it paid nothing and to which it has no contractual right," since it was not covered by the policy. *Frank's Casing*, 246 S.W.3d at 54. Thus, the dissent explains that the insurer's willingness to pay the settlement and the reservation of right is a packaged deal, an offer that the insured accepted in whole. *Id.* at 75. Such an express condition, the dissent explains, could be ac-

cepted by accepting the settlement payment or rejected by rejecting the payment. *Id.* As such, the dissent concluded that the settlement included the reservation of rights by its very terms. *Id.* at 75–76.

2. In our case, neither took place. The Policy did not contain language expressly authorizing a reservation of rights and H & B did not expressly agree to the reservation of rights at the time of settlement.

Cir.2002).[3] Like Kentucky, Ohio courts had not addressed the issue, so the Sixth Circuit surveyed other jurisdictions to determine the majority view. *Id.* at 917.[4] It held that the insurer was entitled to recover its defense costs under a contract implied in fact. Thus, similarly to the Texas Supreme Court, the Sixth Circuit looked for a contract. However, the Sixth Circuit did not require an explicit provision in the original policy, thereby allowing the parties actions to evidence their intentions. *See Id.* at 920. To establish such a contract, the insured must establish that the insured accepted the defense under a reservation of rights. *Id.* at 920. This can occur where the insured knew of the reservation of rights and accepted the defense. *Id.* The court said that the insured need not expressly accept the reservation of rights in order to create an implied contract. Rather, the court said that the insured need only accept the tendered defense. The court suggested that the rule

was fair because the insured had three courses of action available: (1) decline the offer, pay the defense, and seek to recover on the policy; (2) decline the offer and file declaratory judgment; or (3) accept the offer subject to the reservation of rights. *Id.* at 921.[5]

The reservation of rights issue can arise where an insurer defends a claim or where, as here, it contributes to a settlement. Conceptually, the same analysis should apply under a reservation of rights in both circumstances. Usually, as here, the insured is pressing the insurer to resolve the claim by paying the proposed settlement. The law of bad faith exposes an insurer to liability for failing to pay a claim or settle a claim for the insured's benefit where coverage may arguably exist. Thus, an insurer's obligation to its insured extends, as a practical, fiduciary and legal matter beyond merely defending valid claims and settling covered claims on good terms.

3. Although the Court does not address this decision in its prior opinion, *SST* supports the Court's reasoning as previously outlined. In light of H & B's motion to reconsider, wherein it urges the Court to find the Texas State Court decision persuasive, the Court feels it particularly prudent to examine this case in ruling on H & B's current motion.

4. The examined cases include: *Colony Ins. Co. v. G & E Tires & Serv., Inc.*, 777 So.2d 1034 (Fla.Ct.App.2000) (holding that "an insurer could be reimbursed for defense costs when the insurer did not have a duty to defend"); *Grinnell Mut. Reinsurance Co. v. Shierk*, 996 F.Supp. 836 (S.D.Ill.1998) (suggesting that since the insurer accepting the benefit of the insured's defense, was apprised of the reservation of rights, and the insurer had no duty to defend, the insurer could seek reimbursement); *Resure, Inc. v. Chemical Distrs., Inc.*, 927 F.Supp. 190 (M.D.La.1996) (holding that insurer was entitled to reimbursement of defense costs where the insurer reserved its right); *Knapp v. Commonwealth Land Title Ins. Co.*, 932 F.Supp. 1169 (D.Minn.1996) (holding that an insurer is en-

titled to reimbursement of costs after successfully challenging the policy's coverage); *First Fed. Savings & Loan Assoc. of Fargo, North Dakota v. Transamerica Title Ins. Co.*, 793 F.Supp. 265, 269 (D.Colo.1992) (holding that where an insured does not object to the insurer's reservation of right, the insurer is entitled to reimbursement). *Contra, Terra Nova Ins. Co. v. 900 Bar Inc.*, 887 F.2d 1213 (3d Cir. 1989) (rejecting demand for reimbursement based on defect in reservation of rights because the letter was too general); *In re Hansel*, 160 B.R. 66 (Bankr.S.D.Tex.1993) (rejecting demand for reimbursement because of defects in the reservation letter); *Shoshone First Bank v. Pac. Employers Ins. Co.*, 2 P.3d 510 (Wyo.2000) (rejecting demand for reimbursement because the insurer did not timely notice its reservation).

5. Judge Clay issued a vigorous dissent, saying that the majority opinion allows the insurer to "unilaterally alter the terms of an existing contract and enforce an insured to reimburse the insurer for attorney's fees and costs by way of a unilateral reservation of rights letter." *Id.* at 923.

Where an insurer pays a claim or contributes to settlement to fulfill its fiduciary obligations and potential legal obligations for the insured's benefit, it seems logical that it might be afforded an opportunity to contest whether its insurance policy actually obligated it to make these payments. The device of the reservation of rights allows an insurer to do this without prejudicing any rights of its insured.

H & B's strongest arguments are that (1) the policy itself does not provide for the reservation, (2) its own objection to the reservation of rights prevents the formation of a contract implied-in-fact and (3) such a rule dramatically and unfairly alters the relationships between insureds and their insurers. The reservation of rights does not alter the insurer's obligations under an insurance policy; it merely provides an opportunity and forum for their judicial determination. An insured's insistence upon the payment of amounts that the insurance policy does not require would seem to allow the insurer to impose with reservations as a condition of payment. Any other rule would deny the insurer the opportunity for an impartial determination of its obligations. The rule in *SST* seems to maintain the existing dynamic and ensures that the insurer will never abandon the insured in the midst of settlement negotiations.

■ While H & B's arguments are not without some merit, the Court finds the rationale and rule in *SST* to be far superior to that in *Frank's Casing*. This Court is confident that Kentucky courts would adopt the Sixth Circuit's more even-handed approach. The Court's reconsideration here has not changed its view set forth in the August 28, 2006, Memorandum Opinion. The Court has only expanded on its reasoning. For all these reasons, the Court will not alter its initial decision re-

garding the efficacy of the reservation of rights letter in these circumstances.

### III.

The Court has already determined as a matter of law and fact that Travelers is entitled to reimbursement in the amount of $500,000 that it contributed toward settlement. Only a small portion of Baum's anti-trust claim was subject to proof with evidence of disparagement. During motions for directed verdict, Judge Cohn essentially found that the evidence did not support the disparagement theory of Baum's anti-trust action. From this finding the Court felt confident in concluding that the settlement should not be attributed to that theory.

■ Now it must determine when the interest begins on this amount. The Kentucky Supreme Court has said, "[p]recisely when the amount involved qualifies as 'liquidated' is not always clear, but in general 'liquidated' means '[m]ade certain or fixed by agreement of parties or by operation of law.'" *Nucor Corporation v. General Electric*, 812 S.W.2d 136, 141 (Ky.1991)(quoting *Black's Law Dictionary* 930 (6th ed. 1990)). Here, the $500,000 sought is reimbursement for a settlement Travelers made on H & B's behalf. The settlement between Baum and H & B fixed the amount at $500,000. Travelers made the payment and notified H & B. Therefore such an amount qualifies as liquidated by operation of law.

Having decided the settlement qualifies as liquidated, the Court will now consider how to apply interest. Because no interest rate is specified, Ky.Rev.Stat. § 360.010 applies, which provides for an interest rate of eight percent (8%) per year. Ky.Rev. Stat. § 360.010(1). Under Kentucky law, the trial court has discretion in determining whether to award simple or compound interest. *Reliable Mech., Inc. v. Naylor*

*Indus. Servs., Inc.,* 125 S.W.3d 856, 858 (Ky.App.2003). The Court will apply principles of equity and fairness in determining what type of interest should apply. *Id.* H & B has not unreasonably withheld payment from Travelers and has not done so for such a lengthy period of time that would require compound interest. Therefore, simple interest will satisfy the requirements of fairness.

### IV.

Travelers asked the Court to reconsider its view that the obligation to defend arose in 1999, rather than in 2001. The Court declines to do so because it has already considered the matter twice and does not find Travelers renewed arguments to be either new or persuasive. The parties acknowledge that H & B's reimbursable attorney's fees from November 8, 1999, are $78,000. Travelers has no defense to the claim other than its belief that the obligation to pay for the attorney's fees began at a later date.

■ The final question here is whether H & B is entitled to pre-judgment interest because its claim is liquidated. H & B says that the amount is liquidated because the debt was an open account. However, an open account between H & B and its own attorneys does not make the debt liquidated as to Travelers. H & B never tendered the bills to Travelers for payment and, indeed, Travelers was never aware of the precise amount claimed until recently. Thus the amount in question cannot be considered agreed upon or fixed by the parties. *See Nucor Corporation v. General Electric,* 812 S.W.2d 136, 141 (Ky. 1991). Because the claim is not liquidated, H & B is not entitled to prejudgment interest. Since undertaking its obligation to defend in 2001, Travelers has paid attorney's fees in excess of $2.8 million on H &

B's behalf, beyond the $78,000 H & B now seeks.

The Court concludes that H & B is entitled to reimbursement for its attorney's fees in the amount of $78,000 with interest to run from the date of judgment.

The Court will enter an order consistent with this Memorandum Opinion.

### ORDER

The Court has considered the prevailing motions and has set forth its analysis in the accompanying Memorandum Opinion.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Defendant's motion for reconsideration of the Court's prior rulings is DENIED.

IT IS FURTHER ORDERED that H & B shall reimburse Travelers for its settlement payment in the amount of $500,000 with simple interest from March 18, 2005, to the date of this judgment and the statutory rate of simple interest thereafter.

IT IS FURTHER ORDERED that Travelers shall reimburse H & B for its attorney's fees in the amount of $75,000 with statutory simple interest from the date of this order.

This is a final order.